UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| MARGARET MURR, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CAPITAL ONE BANK (USA), N.A.,<br><br>Defendant. | Civil Action No.: 1:13cv 1091<br><br>**JURY TRIAL DEMANDED** LMB/TCB |

2013 AUG 30 P 3: 21
CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

FILED

## CLASS ACTION COMPLAINT

Plaintiff Margaret Murr ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Capital One Bank (USA), N.A. ("Capital One" or "Defendant") pursuant to Rule 23 of the Federal Rules of Civil Procedure. Plaintiff's allegations against Defendant are based on information and belief and upon investigation of Plaintiff's counsel, except for the allegations specifically pertaining to Plaintiff herself, which are based upon her personal knowledge.

### INTRODUCTION

1.      Using standardized and materially uniform promotional materials, Capital One offers customers the opportunity to "SAVE!" with 0% APR for 12 months on funds borrowed through the use of its "Access Checks." The Access Checks are included with the promotional materials (the "0% APR Offer") mailed to Plaintiff and the other members of the Class. *See* Exhibit A at 1.[1] In the promotional materials, Capital One states that it will merely assess a

---

[1]      Capital One made 0% APR Offers with slightly different promotional periods (*i.e.*, 6 and 12 months) and associated transaction fees (*i.e.*, 2% and 3%). Notwithstanding the different promotional periods or transaction fees, Capital One's misrepresentations, omissions, and resulting unlawful practices at issue are the same. For purposes of formatting, what appear as

onetime charge equal to 2% of the funds obtained by writing the Access Checks. Beyond this 2% transaction fee, customers will not be charged anything if the Access Check funds are repaid by the end of the 0% APR Offer's promotional period. According to Capital One, "The only thing worse than paying too much in interest is letting this offer expire." *Id.*

2.     This is simply not true. In reality, Capital One engages in a bait and switch. Not only does Capital One charge the transaction fee, but through undisclosed practices, Capital One also manufactures payment shortfalls, which lead directly to increased interest charges, penalties, fees, and derogatory credit reports.

3.     In the course of the business practices alleged in this complaint, Capital One has committed consumer fraud and breached the contractual agreement between Plaintiff and the members of the Class on the one hand, and Capital One on the other. Capital One has breached its promise to its customers of interest-free use of the Access Checks for the promotional period by first applying monthly payments to the "special transfer" balance created by the Access Checks, resulting in a shortfall of the regular "purchase" balance and application of the far higher ordinary interest rate applied to that shortfall – even when Class Members pay off the regular purchase amounts in full each month. By creating this shortfall, Capital One takes away the interest-free grace period, and interest charges created by using Access Checks begin accruing the moment a customer makes an ordinary credit card purchase during the Access Check's promotional period. In effect, when customers use their credit cards, they lose the interest-free promotional period promised by Capital One. By accepting the 0% APR Offer and using the credit card, Plaintiff and the other members of the Class incur interest immediately on new purchases without any grace period, regardless of whether they pay their regular monthly credit card balance in full each month. Unknown to Plaintiff and the Class, accepting Capital One's

---

pages 1 and 2 of Exhibit A are actually one page (the cover page of the 0% APR Offer), and what appear as pages 3 and 4 of Exhibit A are also one page, which is the back of the front page of the 0% APR Offer.

0% APR Offer was far more costly than not accepting it. None of these material facts were disclosed Plaintiff or the Class.

4.     Capital One's conduct constitutes a breach of contract and unfair and deceptive practices in violation of common law fraud, constructive fraud, the Arizona Consumer Fraud Act, A.R.S. §44-1521, *et seq.* ("ACFA"), and the Truth in Lending Act, 15 U.S.C. § 1601 et seq. ("TILA"), including the Fair Credit Billing Act, 15 U.S.C. § 1666 ("FCBA") and the Credit Card Accountability Responsibility and Disclosure Act of 2009, 15 U.S.C. §1637, *et seq.* (the "Credit CARD Act").

5.     Accordingly, Plaintiff brings this action on behalf of herself and all other similarly situated customers of Capital One for restitution, damages and declaratory and injunctive relief.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction over this action under 28 U.S.C. §1332(d)(2) in that the matter is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and members of the Class are citizens of a State different than the Defendant.

7.     This Court has personal jurisdiction over the parties in this action by the fact that Defendant is a corporation that is headquartered and is licensed to do business in the state of Virginia and otherwise conduct business in this District.

8.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) because the Defendant is headquartered in this District, the conduct alleged arose in this District, and Defendant regularly conducts business in this District.

## PARTIES

9.     Plaintiff Margaret Murr is an individual residing in Surprise, Arizona. Plaintiff has been damaged and has suffered an ascertainable loss as a result of Capital One's false,

deceptive, misleading, unfair and unconscionable methods, acts, practices and conduct, and as a result of Capital One's breach of its agreements with Plaintiff. Plaintiff has been injured in a manner common and typical of other Class members. As stated more fully below, on or about October 11, 2012, and in reliance on Capital One's promises in the solicitation, including that she could write a check at 0% APR for 12 months and had until November 4, 2012, to start saving with a 0% APR for 12 months, Plaintiff timely accepted Capital One's 0% APR Offer. Plaintiff wrote an Access Check in the amount of $4,358.80 to pay for her property taxes and timely paid the associated 2% transaction fee. Plaintiff has always timely paid her Capital One balances in full each month. Nevertheless, as a result of accepting the 0% APR Offer, Plaintiff was charged and improperly incurred interest charges, late fees, minimum payment requirements, lost the interest-free grace period associated with her Capital One credit card, has been the subject of derogatory credit reports and suffered negative credit consequences, and has been harassed by debt collectors.

10. Defendant Capital One Bank (USA), N.A. ("COBNA" or "Capital One"), which is a subsidiary of Capital One Financial Corporation, is a federal bank headquartered in McLean, Virginia. COBNA is the fourth largest issuer of Visa and MasterCard credit cards in the United States based on the outstanding balance of credit card loans as of December 31, 2012.

## FACTUAL ALLEGATIONS

### *Background*

11. Like other credit card issuers, Capital One credit cards impose interest rates on balances customers do not pay off in full by the end of the monthly "grace period." Capital One typically imposes interest rates ranging from 13% to over 18% on unpaid credit card balances. Capital One customers can avoid paying these high interest rates by paying off their balance in full before the end of the monthly grace period.

12. Capital One's standard form Credit Card Agreement, which is a contract of adhesion, may be modified by subsequent Capital One offers. In its Agreement, Capital One

states: "**New Offers.** In the future, we might make new offers to you or forward offers from others that we think you might be interested in. These offers may have new or different terms and documentation for these offers will be provided when we make you the offer. If you accept the offer, your previously disclosed terms will still apply except as modified by the offer." *See* Exhibit B at 1-2. *See also id.* at 14 (section of the Credit Card Agreement entitled "**Changes to Your Agreement**" states, "[a]t any time, we may add, delete or change any term of this Agreement...").

13. Capital One's standard form Credit Card Agreement provides customers an interest-free grace period on their monthly purchases:

> **Interest Charges and Fees**
> We will charge Interest Charges and Fees to your account as disclosed to you in your *Statements* and other *Truth in Lending Disclosures.* In general, *Interest Charges* begin to accrue from the day a transaction occurs. However, we will not charge you interest on any new balances posted to the purchase *Segment* of your *Account* provided you have paid your previous balance in full by the due date.

*See* Exhibit B at 4-5.

> **Paying Interest**
> Your due date is at least 25 days after the close of each billing cycle. We will not charge interest on new purchases, provided you have paid your previous balance in full by the due date each month. We will begin charging interest on cash advances and transfers on the transaction date.

*See* Exhibit B at 1. Capital One's standard form Credit Card Agreement explains how one can avoid paying interest charges:

> **How Can I avoid Paying Interest Charges?**
> Each month you pay your "New Balance" in full by the due date, you will have a minimum grace period of 25 days with no interest charge on all new 1) purchases, 2) balance transfers, 3) special purchases and 4) other charges. If you have been paying your account in full with no interest charges applied and you do not pay your next bill in full, prorated interest charges will be assessed. There is no grace period on cash advances, special transfers, or on any new transaction when there is an unpaid balance from a previous bill.

*See* Exhibit B at 1-2. Capital One repeats this provision on the back of each customer's monthly account statements. *See* Exhibit C.

14. Thus, pursuant to the Credit Card Agreement, Capital One may not charge interest on purchase balances that the customer pays in full before the statement due date – which is not less than 25 days after the close of each billing cycle.

15. Capital One's standard form Credit Card Agreement also sets forth the manner in which it applies customer payments:

> **How We Apply Your Payments**
> We apply your minimum payments to lower Annual percentage Rate balances before higher ones. We apply any portion of your payment in excess of your minimum payment, to higher Annual Percentage Rate balances before lower ones.

*See* Exhibit B at 6.

16. Capital One separates customer account transactions into different transaction types, which it describes as "segments" on monthly invoices. These segments are the purchase segment, balance transfer segment, cash advance segment, and special transfer segment. Ordinary monthly credit card purchases are segregated into the purchase segment of monthly invoices. *See* Exhibit A at 3 ("we will bill each transaction to the applicable *Segment* of your *Account*") (emphasis in original). For example, Plaintiff's monthly invoice due December 25, 2012, lists a purchase balance of $958.22, a cash advance balance of $0, and a special transfer balance of $4,405.85. *See* Exhibit C at 1.

17. Capital One treats account segments differently. For example, Capital One states "[w]e may give you different credit limits for the different *Segments* of your *Account*." *See* Exhibit B at 2 (emphasis in original). According to the Credit Card Agreement, "segments" are "subject to unique pricing, grace periods or other terms." *Id.* at 17. As explained below, Capital One stated that the Access Check would be treated as a special transfer and the balance created by the Access Check would post to "one of your special transfer segments of your account" as opposed to the regular "purchase" segment. Exhibit A at 4.

### *The 0% APR Offer*

18. In and around July 2010, and possibly earlier, through the present, Capital One offered certain of its customers a "chance to save for 12 months" by allowing customers to borrow money on their credit cards at "0% APR" by using "Access Checks" (the "0% APR Offer"). *See* Exhibit A at 1.

19. According to Capital One, customers have three different options for taking advantage of the 0% APR Offer: (1) "Transfer balances—0% for 12 months"; (2) "Write a check to yourself—0% for 12 months"; or (3) "Make a purchase—0% for 12 months" through "[u]se of one of the attached checks." *See* Exhibit A at 1. To accept Capital One's 0% APR Offer, all Plaintiff and others had to do was act by the expiration date and pay a fee of 2% for each transaction (the "transaction fee"). *Id.* Plaintiff and Class Members each utilized options two and three – using the Access Checks advertised as carrying 0% APR for the promotional period.

20. With the 0% APR Offer, customers could use the Access Checks that accompanied the solicitation in any amount they chose, up to the amount of their available credit. *See* Exhibit A at 2. As disclosed in the solicitation, Capital One charged customers a one-time transaction fee of 2% of the amount written on each Access Check. *Id.* at 1. The solicitation further provided that if customers acted by the date specified on the 0% APR Offer, they would not be charged interest on the amounts borrowed through the Access Checks for a promotional period lasting a defined term of months (12 months for Plaintiff). *Id.* Further, if the balance was paid in full at any time within that promotional period, no interest would be charged on the Access Check amount. Finally, if the balance was not paid in full at the end of that promotional period, then any remaining balance would be subject to an Annual Percentage Rate applicable to regular purchases. *Id.* at 2. The solicitation appeared as follows:



21.     Capital One repeated the zero interest offer on the Access Checks themselves, which prominently state "0% Promotional APR for 12 months":



*See* Exhibit A at 4.

22.    When accepted by the Plaintiff and Class Members, this 0% APR Offer constituted a written modification of any terms in the Credit Card Agreement that were inconsistent with the terms of the offer. *See* Exhibit B at 1-2 (quoted in ¶12 above), 14 (section of the Credit Card Agreement entitled **"Changes to Your Agreement"** states, "[a]t any time, we may add, delete or change any term of this Agreement…"); Exhibit A at 4 (the 0% APR Offer states that the Access Checks "[a]re subject to the terms and conditions of your Customer Agreement as amended").

23.    The 0% APR Offer stated that the balance assumed through use of the Access Checks constituted a "special transfer." *See* Exhibit A at 3. According to the 0% APR Offer, the special transfer balance is subject to the terms of the Credit Card Agreement. *Id.* at 4.

24.    In breach of the terms of the Credit Card Agreement as modified by the 0% APR Offer, Capital One effectively charged customers who used the Access Checks the regular Annual Percentage Rate applicable to regular "purchase" balances, even when they paid their purchase balance in full before the payment due date.

25.    In breach of the Credit Card Agreement as modified by the 0% APR Offer, Capital One first applied a portion of the customer's monthly payment to the special transfer balance (which was subject to an interest rate of 0%), thereby leaving some or all of the amount equal to the purchase balance unpaid and subject to the regular interest rate charges. This was true even for customers like the Plaintiff who paid more than their minimum monthly payments.

26.    By way of example, assume a Capital One customer makes ordinary purchases of $1,000 during each billing cycle. Notwithstanding the customer's ordinary 13.9% APR, by paying the full $1,000 before the due date, the customer will avoid paying interest because of the contractual grace period. However, if the customer accepts Capital One's 0% APR Offer by using an Access Check for $5,000 (incurring a 2% transaction fee equal to$100), the customer will lose her contractual grace period and incur the 13.9% APR on future ordinary purchases. This is because rather than applying the customer's $1,000 payment to the full amount of her

purchase balance, Capital One first applies a portion of the $1,000 to the $5,000 special transfer balance created by using the Access Check included with the 0% APR Offer. In Plaintiff's situation, Capital One applied slightly more than her minimum payment amount to her special transfer balance created as a result of her use of the Access Check. This improper and deceptive allocation results in an outstanding balance on the purchase segment of the customer's account. An outstanding balance on the purchase segment causes the customer to lose the grace period. Once the grace period is deemed lost, purchase balance transactions will incur interest at the ordinary interest rate (for Plaintiff, 13.9%) beginning on the day of the purchase. Accordingly, rather than permit customers to pay off the zero-interest Access Check amount at the end of the promotional period as promised, Capital One forces its customers to pay down their Access Check balance before the expiration of the promotional period, in addition to charging interest at the regular rate (13.9% for Plaintiff).

27.     Capital One never disclosed that it would apply monthly payments to special transfer balances, leaving the purchase balance partially unpaid and subject to interest charges. In fact, Capital One affirmatively represented the *opposite* – that amounts borrowed by writing Access Checks would enjoy a 0% interest charge for 12 months and the customer would not have to pay any interest on these amounts paid off within the 12-month period, other than the original 2% transaction fee. Capital One's conduct also breached the Credit Card Agreement, as modified by the 0% APR Offer. As a result of Capital One's improper conduct, Class Members incurred interest charges at the regular Annual Percentage Rate, plus the initial 2% transaction fee, on amounts borrowed with Access Checks. Rather than obtaining these funds at a discount, Plaintiff and the other Class Members paid a premium.

28.     Through its 0% APR Offer, Capital One misrepresented or failed to disclose the material fact that, notwithstanding the lure of 0% APR for a period up to 12 months, Plaintiff and Class Members would have to pay in full the balance created by using the Access Check *and* the purchase balance created through ordinary credit card purchases in order to avoid losing the no interest grace period.

29.     Thus, Plaintiff and the Class have been harmed because Capital One charged and collected from them interest charges and late fees that they did not incur or owe.

30.     Moreover, Capital One never disclosed that as a result of accepting the 0% APR Offer and using an Access Check, Plaintiff and members of the Class will incur higher minimum payment requirements. Capital One never disclosed that it calculates the monthly minimum payment amount based on 1% of the ordinary purchase balance *and* 1% of the special transfer balance created by the Access Check amount, plus interest. For example, if a customer makes $1,000 in ordinary purchases and uses an Access Check to pay a $5,000 bill, the minimum payment the following month will be 1% of $6,000 or $60. Because of the manufactured shortfall Capital One creates by diverting monthly payment amounts to make early payments to the special transfer balance, this minimum payment amount will also include improper interest charges. For example, if the customer in the example above incurred a $10 interest charge because of Capital One's undisclosed payment diversion and again made $1,000 in ordinary transactions the following month, her minimum payment requirement would be 1% of the sum of her ordinary purchase and special transfer balances plus $10.

31.     Capital One also makes derogatory credit reports to credit reporting agencies concerning those customers who accept the 0% APR Offer, but refuse to pay some or all of the improper interest charges or the special transfer balance during the promotional period.

32.     Capital One's derogatory credit reports are false and misleading because the interest charges and late fees are not in fact due and owing.

33.     Although it is highly deceptive and buried in the fine-print of the 0% APR Offer, Capital One included the following about the "transfer a balance" option of its 0% APR Offer, listed as option number one in paragraph 19, above:

Q. Can I avoid interest on new purchases after I transfer a balance?

A. Once you transfer a balance with this offer, you will pay interest on any new purchases you make with your credit card unless you pay your entire balance

(including transferred balances) in full each month. Please see your Customer Agreement for details on Interest Charges.

*See* Exhibit A at 3. Notably, although that provision nonetheless breaches the Credit Card Agreement, Plaintiff and Class Members did not select or utilize the transfer a balance option of the 0% APR Offer. Rather, Plaintiff and Class Members all selected the Access Check options of the 0% APR Offer.

34. In or about December 2012, and as a result of a settlement with the Vermont Attorney General's Office, Capital One's solicitation for the 0% APR promotional program contained an acknowledgment – *for the first time* – that participation in its 0% APR promotion will lead to the elimination of the grace period because Capital One's undisclosed practice was to apply payments to satisfy the special transfer balance before applying payments to the purchase balance. Nevertheless, even this belated disclosure, which was made after the Plaintiff and the other Class Members accepted the terms of the 0% APR Offer, expressly limits the grace period elimination to those customers who, unlike Plaintiff and Class members who used Access Checks, participated in the 0% APR promotion by "transfer[ing] a balance." In relevant part, the new solicitation provides:

> Please read:
> **If you accept this offer, you will pay interest on all purchases made with your credit card until your entire balance is paid off.**
> See Special Notice on the back of this offer.
>
> \*      \*      \*
>
> **SPECIAL NOTICE to customers who pay their entire balance in full each month:**
> If you always pay your balance in full each month, you do not pay interest on your purchases. This is called a grace period. Please note that if you take this offer, you will lose your grace period. If you transfer a balance to this account, you will begin paying interest on all new purchases, even if you pay your purchase balance in full each month. To avoid paying interest on your purchases, you must pay both your transferred balance and your purchase balance in full.

*See* Exhibit D; Exhibit E.

35.     Capital One has been fully aware that its conduct is deceptive. In addition to the action brought by the Vermont Attorney General Office, numerous customers have complained about the deceptive nature of the 0% APR Offer. For example, in a post entitled "Fraudulent description of 0% APR offer" dated March 7, 2011, one customer wrote:

> Late in 2010 Capital One were [sic] offering cash advance checks at zero percent APR for 12 months. I was buying land at the time and decided that this would help cash flow, decided to avail myself of the offer and wrote a check in the amount of $6,000. I was a little taken aback when I received the first statement which showed this transaction, because the $6,000 amount was mixed in with the regular monthly transactions. I pay off the balance on this card in full, without fail EVERY month and my plan was to pay off my statement balances in full, plus $500 each month, so that by the time the 12 months had expired, the cash advance would be paid off - thus incurring no interest, just the $120 cash advance fee (which they only tell you about when you grill them on it). The way this 0% APR transaction appeared on my credit card statement makes it somewhat complicated to figure out the exact amount payable each month, and this was further complicated by having made a double payment in error one month and then missing the due date in January. I clearly expected to pay a late fee and interest for the late January payment along with the transactions listed on my statement which was due on Feb 25th. I therefore included these amounts along with the total for January transactions.
>
> When I received my March statement, I found that I had still been charged interest on the outstanding balance - which of course solely consisted of the remaining balance of the zero percent APR check!
>
> I queried this with Capital One and at first was told that the reason for interest being charged was that it did not arrive in time to be credited on the February statement, even though the March statement clearly shows the credit to my account on the due date. I was told it would take 2 months to work itself out, but that I would be credited. I then asked the question "Well if it takes 2 months to work itself out, what happens next month when the interest still appears on my account and has not been paid? Surely that amount will be picked up again and further interest charged". I was put on hold.
>
> I was then told by the representative that she had been wrong and that I WAS being billed for interest on the ENTIRE outstanding balance - which includes the outstanding balance of the zero per cent APR advance!! So how can this be zero percent APR I asked?

I was then told that the only way I could avoid being charged interest on the zero percent APR portion was to pay off the entire balance of transactions to date and then not use the card again until I was ready to pay off the zero percent APR portion.

I asked to speak to a supervisor and got the same story.

I think anyone reading this will understand that by this time any normally honest and reasonable person -would have become apoplectic, seething angry and ready to tear someone's head off. What made it worse was being told that they could understand my frustration!

Sadly I succumbed to the power of invective - which didn't really make me feel too much better, so I am hoping that someone reading this can do something about the situation - which I consider to be a total rip off by a company which I had dealt with for nearly 10 years and almost without exception had always paid them the balance in full each month.

It has not cost me a great deal of money, but I feel they need to be brought to book for such shameful business practices - which according to my definition of the word I would consider to be fraudulent.

*See* http://www.complaintsboard.com/complaints/capital-one-credit-card-oriental-north-carolina-c428344.html (last visited August 28, 2013).

36. Capital One's ongoing policy is to eliminate its customers' grace periods, and demand minimum payment amounts and interest charges that are contrary to the terms of the 0% APR Offer and the Credit Card Agreement.

37. Capital One's ongoing policy is also to make derogatory reports to credit agencies that Plaintiff and Class Members are delinquent when, in fact, they are not delinquent and they have complied with the terms of 0% APR Offer and the Credit Card Agreements.

**_Plaintiff's Facts_**

38. Plaintiff has held a Capital One credit card for several years. Plaintiff's Capital One credit card carries an APR of 13.90% on any purchase balance not paid after the monthly grace period.

39. In September 2012, Plaintiff received the 0% APR Offer from Capital One that states, in bold type, "**You have until November 4, 2012, to start saving with a 0% Annual Percentage Rate (APR) for 12 months.**" *See* Exhibit A at 1.

40.     The offer states that if Plaintiff uses one of the enclosed checks before November 4, 2012, the funds she draws using the checks will carry a 0% APR for 12 months. *See* Exhibit A at 1. After that, the interest rate on any outstanding balance will be 13.9% – the same as the interest rate charged on purchases made if the amount of the purchase is not paid within the monthly grace period. *Id.* at 2. The 0% APR Offer also stated that if Plaintiff transferred a balance to her Capital One account, the transferred balance would carry a 0% APR for 12 months. *Id.* at 1. The 0% APR Offer provides that Capital One will charge a fee of 2% for each transaction under this promotion. *Id.*

41.     The 0% APR Offer further provides that any balance assumed using the Access Checks will be treated as a "special transfer." *See* Exhibit A at 4.

42.     The Access Check Offer states that the Access Checks are subject to the Credit Card Agreement "as amended." *See* Exhibit A at 4.

43.     Nowhere in the Credit Card Agreement or 0% APR Offer accepted by Plaintiff did Capital One state that it would apply a portion of her monthly payments to her special transfer balance before applying them to her purchase balance. To the contrary, the 0% APR Offer stated **"Write a check to yourself – 0% for 12 months"** and "We will begin charging 0% interest on these checks and transfers on the transaction date." *See* Exhibit A at 1, 4.

44.     Nowhere in the 0% APR Offer accepted by Plaintiff did Capital One state that it would eliminate the grace period associated with Plaintiff's account unless she paid the entire purchase balance and special transfer balance immediately and in full.

45.     On or about October 11, 2012, Plaintiff, relying on the representations in the 0% APR Offer, sent an Access Check in the amount of $4,358.80 to the Maricopa County Tax Collector for the amount owed in property taxes on Plaintiff's home.

46.     According to the terms of the 0% APR Offer, Plaintiff did not owe any portion of the $4,358.80 Access Check and would not incur interest on that amount for 12 months – until October 2013.

47.     The Access Check transaction and the 2% transaction fee ($87.18) were reflected on Plaintiff's next account statement for the billing period of September 29 – October 28, 2012. *See* Exhibit F. During that October 2012 monthly billing cycle, Plaintiff also made ordinary purchases totaling $363.06. *Id.* Accordingly, the sum of her Access Check ($4,358.80), 2% transaction fee for the Access Check ($87.18) and the ordinary monthly purchases ($363.06) totaled $4,809.04. Capital One's account statement also included a $48 minimum payment requirement, which is approximately 1% of the $4,809.04 – not 1% of the ordinary purchases Plaintiff made during the billing cycle. Plaintiff paid the entire amount of the Access Check transaction fee plus the ordinary monthly purchases (which totaled $450.24) in full before the due date of November 25, 2012. *See* Exhibit C at 1 (reflecting electronic payment of $450.24 received on November 16, 2012).

48.     Plaintiff subsequently received her account statement for the October 29 – November 28, 2012 billing period. *See* Exhibit C. During this billing cycle, Plaintiff made ordinary purchases totaling $1,331.76. Plaintiff also received an unrelated travel reward credit of $128.29. Despite having paid her previous purchase balance in full and on time the previous month, the November 2012 account statement showed an interest charge of $11.31. This amount equaled an interest charge at an annual percentage rate of 13.9% applied to an average daily purchase balance of $958.22. Unbeknownst to Plaintiff, Capital One had removed her Grace Period when she did not pay off the entire Access Check amount during the billing cycle in which it was utilized, and therefore charged 13.9% interest on the next billing cycle's average daily purchase balance of $958.22. The November 2012 account statement also included a $67 minimum payment charge. This minimum payment equals 1% of the total of Plaintiff's purchase balance and Access Check balance, plus the improper $11.31 interest charge. The minimum payment amount is significantly in excess of 1% of the $1,331.76 in ordinary purchases made during the billing cycle and takes into account Plaintiff's Access Check balance. Plaintiff paid the entire amount of the ordinary monthly purchases ($1,331.76) and the improper $11.31 interest charge, minus the credit of $128.29 in full before the due date of December 25, 2012.

*See* Exhibit H at 1 (January 2012 statement reflecting electronic payment of $1,214.78 received on December 4, 2012). Accordingly, as a result of Capital One's unlawful conduct, Plaintiff lost her Grace Period, and was charged and paid $11.31 in improper interest amounts. Plaintiff was also charged a minimum payment amount that was improperly calculated based on her Access Check and the unlawful interest charges.

49. During the December 2012 monthly billing cycle, Plaintiff did not make any purchases. *See* Exhibit G (account statement for the billing period of November 29 – December 28, 2012). Despite paying her previous purchase balance in full and on time the previous month, and carrying a $0 balance, the December 2012 account statement showed an interest charge of $2.76, a minimum payment requirement of $46.00, and an outstanding balance of $4,361.56. The $46 minimum payment requirement, which is approximately 1% of $4,361.56 – not 1% of the ordinary purchases Plaintiff made during the billing cycle. This minimum payment equals 1% of the total of Plaintiff's purchase balance and Access Check balance, plus the improper $2.76 interest charge. Plaintiff paid the $2.76 interest charge on January 3, 2013. *See* Exhibit H at 1 (February 2013 statement reflecting electronic payment of $2.76 received on January 3, 2013). Accordingly, as a result of Capital One's unlawful conduct, Plaintiff was charged and paid an additional $2.76 in improper interest amounts. Moreover, despite not making any purchases during the December 2012 billing cycle, Capital One demanded a minimum payment amount from Plaintiff. Accordingly, Capital One was requiring Plaintiff to pay back a portion of her Access Check amount before the expiration of the 0% APR Offer's 12-month promotional period. Plaintiff was also charged a minimum payment amount that was improperly calculated based on her Access Check and the unlawful interest charges. Moreover, Capital One did not apply Plaintiff's minimum payments from the previous month ($67) first to a lower APR balance, and any portion in excess ($1,147.78) to a higher APR balance.

50. During the January 2013 monthly billing cycle, Plaintiff did not make any purchases. *See* Exhibit H (account statement for the billing period of December 29 – January 28, 2013). Despite making no purchases during the January 2013 billing cycle, carrying a $0

balance, and not owing any of the Access Check amount until October 2013, the January 2013 account statement showed an interest charge of $0.64, a past due fee of $25.00, a minimum payment requirement of $112.24, and an outstanding balance of $4,384.44. Plaintiff has not paid any of this amount because it is not owed under the terms of the 0% APR Offer and the Credit Card Agreement.

51. During the February 2013 monthly billing cycle, Plaintiff did not make any purchases. *See* Exhibit I (account statement for the billing period of January 29 – February 28, 2013). Despite making no purchases during the February 2013 billing cycle, carrying a $0 balance, and not owing any of the Access Check amount until October 2013, the February 2013 account statement showed an interest charge of $0.96, a past due fee of $35.00, a minimum payment requirement of $192.24, and an outstanding balance of $4,420.40. Plaintiff has not paid any of this amount because it is not owed under the terms of the 0% APR Offer and the Credit Card Agreement.

52. Despite always making timely payments of the full amount properly owed on her Capital One credit card, Capital One made derogatory, false credit reports about Plaintiff and Plaintiff's husband to credit reporting agencies. Plaintiff and her husband have never made late or delinquent payments. Nevertheless, as a direct result of Capital One's improper derogatory reporting associated with its deceptive and unlawful conduct described above, the credit scores of Plaintiff and her husband have been lowered. Moreover, as a direct result of Capital One's derogatory and false credit report, beginning on or about March 1, 2013, Plaintiff and her husband began receiving harassing calls from Capital One's debt collectors at all times of the day and night, including during the weekends. For example, a debt collector who identified herself as being from Capital One called Plaintiff's home on Sunday, March 10, 2013, at approximately 8:40 a.m. from 1-866-929-5307.

53. Capital One continues to send statements to Plaintiff demanding improper amounts owe, and that improperly state she is behind on payments. *See* Exhibit J (account statement for the billing period of April 29 – May 28, 2013). For example, despite timely paying

off all purchase balance amounts and even certain improper, manufactured interest charges resulting from the use of the Access Check, and despite not having made any purchases with her Capital One credit card since November 2012, Capital One's account statement for May 2013, demanded a $435.24 minimum payment, a $35 past due fee, and $2.18 interest charges from a supposed average daily purchase balance of $190.95.

54.     On August 5, 2013, Plaintiff received a statement from Capital One for the billing cycle June 29 – July 28, 2013. *See* Exhibit K. Despite timely paying off all purchase balance amounts and even certain improper, manufactured interest charges resulting from the use of the Access Check, and despite not having made any purchases with her Capital One credit card since November 2012, Capital One's account statement for August 2013, demanded full payment of a balance of $4,535.89, which according to Capital One is repayment of the entire Access Check amount, plus a $2.59 interest charge from a supposed average daily purchase balance of $226.32. Thus, Capital One has now demanded repayment of the entire Access Check amount two months before the expiration of the 0% APR Offer's 12-month promotional period.

55.     On or about November 3, 2012, after calling Capital One and questioning them about these improper practices, Plaintiff sent a written letter of protest to Capital One at the address provided on her monthly invoice. Plaintiff demanded that Capital One fix the practices alleged herein, including by reinstating her contractual grace period and refunding the improper interest charges. Capital One never corrected its practices, refunded the improper charges, or even provided a written response to Plaintiff's written inquiry.

**Plaintiff and the Class Incurred Damages and Suffered Injuries Caused by Defendant**

56.     Capital One has charged Plaintiff interest charges, minimum payment amounts, and late fees since November 2012 despite the fact that Plaintiff has: (a) paid her purchase balance in full; and (b) made no purchases with her Capital One credit card. Moreover, Capital One has made false reports to credit agencies, and caused numerous harassing calls to Plaintiff in order to attempt to collect these improper amounts.

57.     The interest charges, minimum payment amounts, and late fees assessed on Plaintiff are representative of millions of dollars of improper interest charges, minimum payment amounts, and late fees that Capital One has wrongfully assessed its customers' accounts.

## CLASS ACTION ALLEGATIONS

58.     Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of herself, individually, and on behalf of the following classes (referred to herein, collectively, as the "Class"):

> All Capital One credit card account holders who have assumed a "special transfer" balance through use of the 0% APR Offer's Access Check before the expiration of the offer deadline (the "Nationwide Class"); and

> All Capital One credit card account holders in Arizona who have assumed a "special transfer" balance through use of the 0% APR Offer's Access Check before the expiration of the offer deadline (the "Arizona Class").

59.     Excluded from the Class is: (1) any Judge or Magistrate presiding over this action and immediate members of their families; (2) Defendant, Defendant's subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant has a controlling interest and their current or former officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; and (4) the legal representatives, successors or assigns of any such excluded persons.

60.     Plaintiff does not know the exact size or identities of the members of the proposed Class, since such information is in the exclusive control of Capital One. Plaintiff believes that the Class encompasses many thousands of individuals whose identities can be readily ascertained from Defendant's books and records. Therefore, the proposed Class is so numerous that joinder of all members is impracticable.

61.     Based on the size of the transactions at issue and the likely number of people affected, Plaintiff believes the amount in controversy exceeds $5 million.

62.     All members of the Class have been subject to and affected by the same conduct. The claims are based on the terms of form adhesionary contracts prepared by Capital One. There

are questions of law and fact that are common to the Class, and predominate over any questions affecting only individual members of the Class. These questions include, but are not limited to the following:

a) Whether the 0% APR Offer permitted Capital One to eliminate customers' grace periods when customers complied with the 0% APR Offer;

b) Whether Capital One breached an express term of its 0% APR Offer with Plaintiff and the Class members by charging them interest charges, late fees, and demanding minimum payments on special transfer balances before the end of the promotional period;

c) Whether Capital One breached an express term of its Credit Card Agreement with Plaintiff and the Class members by charging them interest charges, late fees, and demanding minimum payments on special transfer balances before the end of the promotional period;

d) Whether Capital One made false or incomplete reports to credit agencies as a result of the 0% APR Offer;

e) Whether Plaintiff and members of the Class members reasonably relied on material misrepresentations and omissions made by Capital One relating to the 0% APR Offer, and whether Plaintiff and members of the Class suffered damage as a result of their reasonable reliance;

f) Whether Capital One's alleged conduct constitutes a violation of the laws asserted herein;

g) Whether the Court can order damages, and the amount of such damages;

h) Whether the Plaintiff and Class members are entitled to injunctive relief; and

i) Whether the Plaintiff and Class members are entitled to declaratory relief.

63.     The claims of Plaintiff are typical of the claims of the Class and do not conflict with the interests of any other members of the Class in that both the Plaintiff and the other members of the Class were subject to the same conduct, and were governed by the terms of the same standard form agreements.

64.     Plaintiff will fairly and adequately represent the interests of the Class. She is committed to the vigorous prosecution of the Class's claims and has retained attorneys who are qualified to pursue this litigation and have experience in the prosecution of this type of class action.

65.     A class action is superior to other methods for the fair and efficient adjudication of this controversy. A class action regarding the issues in this case does not create any problems of manageability.

66.     This putative class action meets the requirements of Fed. R. Civ. P. 23(b)(2) and Fed. R. Civ. P. 23(b)(3).

67.     Capital One has acted on grounds that apply generally to the Class so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

68.     Capital One's conduct is fraudulent, wanton and malicious, thereby justifying an award of punitive damages to Plaintiff and the other members of the Class.

## COUNT I

### COMMON LAW FRAUD / FRAUDULENT INDUCEMENT
### (On Behalf of the Class)

69.     Plaintiff repeats and re-alleges every allegation above as if set forth herein in full.

70.     Plaintiff brings this claim on her own behalf and on behalf of each member of the Class described above.

71.     Capital One's standard Credit Card Agreement states: "We make decisions to grant credit and issue you a Card from our offices in Virginia. This Agreement will be

interpreted using Virginia Law. Federal law will be used when it applies." Exhibit B at 7. Capital One defines the term "Agreement" broadly to include the terms for customer's credit card accounts, as well as the terms of future offers and Access Checks. *Id.* at 1-2, 4. Accordingly, Virginia law applies.

72. Capital One's misrepresentations and omissions relating to the 0% APR Offer described above constitute a violation of common law fraud.

73. Through the 0% APR Offer, Capital One promised customers a no-interest opportunity for a term of months through interest-free Access Checks. As described above, Capital One's statements in its 0% APR Offer were false and misleading, including that a 0% APR would be applied to Access Check amounts during the promotional period. *See* Exhibit A at 1 ("**You have until November 4, 2012, to start saving with a 0% Annual Percentage Rate (APR) for 12 months.** After that, your rate will simply go to your purchase rate, which is currently 13.9%."), 5 (Capital One stated on the Access Checks, "0% Promotional APR for 12 months"). In its 0% APR Offer, Capital One also concealed and omitted the information described above, including that customers who use their Capital One credit cards during the Promotion Period will lose their Grace Periods unless they immediately pay off the Special Transfer balance, Purchase Balance, and any interest.

74. Capital One's misrepresentations and omissions in its 0% APR Offer were of material facts.

75. Capital One's misrepresentations and omissions in its 0% APR Offer were made and omitted intentionally and knowingly with intent to mislead Plaintiff and Class members and to induce Plaintiff and Class members into accepting the 0% APR Offer by using the Access Checks.

76. Plaintiff and Class members reasonably relied on Capital One's misrepresentations and omissions in its 0% APR Offer, and accepting the 0% APR Offer and used the Access Checks based on the misrepresentations and omissions in the 0% APR Offer.

Plaintiff and Class members did not have knowledge of and could not have reasonably discovered Capital One's misrepresentations and omissions in its 0% APR Offer.

77.     As a direct and proximate result of Capital One's misrepresentations and omissions in its 0% APR Offer, Plaintiff and Class members have been damaged in an amount to be determined at trial.

78.     Capital One's conduct was wanton, malicious and done with the intent to defraud, entitling Plaintiff and the Class to punitive damages

## COUNT II

### CONSTRUCTIVE FRAUD
### (On Behalf of the Class)

79.     Plaintiff repeats and re-alleges every allegation above as if set forth herein in full.

80.     Plaintiff brings this claim on her own behalf and on behalf of each member of the Class described above.

81.     Capital One's standard Credit Card Agreement states: "We make decisions to grant credit and issue you a Card from our offices in Virginia. This Agreement will be interpreted using Virginia Law. Federal law will be used when it applies." Exhibit B at 7. Capital One defines term "Agreement" broadly to include the terms for customer's credit card accounts, as well as the terms of future offers and Access Checks. *Id.* at 1-2, 4. Accordingly, Virginia law applies.

82.     Capital One's misrepresentations and omissions relating to the 0% APR Offer described above constitute constructive fraud.

83.     Through the 0% APR Offer, Capital One promised customers a no-interest opportunity for a term of months through interest-free Access Checks. As described above, Capital One's statements in its 0% APR Offer were false and misleading, including that a 0% APR would be applied to Access Check amounts during the Promotional Period. *See* Exhibit A at 1 ("**You have until November 4, 2012, to start saving with a 0% Annual Percentage Rate**

**(APR) for 12 months.** After that, your rate will simply go to your purchase rate, which is currently 13.9%.")%."), 5 (Capital One stated on the Access Checks, "0% Promotional APR for 12 months"). In its 0% APR Offer, Capital One also concealed and omitted the information described above, including that customers who use their Capital One credit cards during the Promotion Period will lose their Grace Periods unless they immediately pay off the Special Transfer balance, Purchase Balance, and any interest.

84. Capital One's misrepresentations and omissions in its 0% APR Offer were of material facts.

85. Capital One's misrepresentations and omissions in its 0% APR Offer were made when Capital One had no reasonable grounds for believing them to be true, and with intent to mislead Plaintiff and Class members and to induce Plaintiff and Class members into accepting the 0% APR Offer by using the Access Checks.

86. In reasonable reliance on Plaintiff and Class members reasonably relied on Capital One's misrepresentations and omissions in its 0% APR Offer, and accepting the 0% APR Offer and used the Access Checks based on the misrepresentations and omissions in the 0% APR Offer. Plaintiff and Class members did not have knowledge of and could not have reasonably discovered Capital One's misrepresentations and omissions in its 0% APR Offer.

87. As a direct and proximate result of Capital One's misrepresentations and omissions in its 0% APR Offer, Plaintiff and Class members have been damaged in an amount to be determined at trial.

## COUNT III

### BREACH OF CONTRACT
### (On Behalf of the Class)

88. Plaintiff repeats and re-alleges every allegation above as if set forth herein in full.

89. Plaintiff brings this claim on her own behalf and on behalf of each member of the Class described above.

90. Capital One's standard Credit Card Agreement states: "This Agreement will be interpreted using Virginia Law. Federal law will be used when it applies." Exhibit B at 7. Accordingly, Virginia law applies.

91. The 0% APR Offer described above constitutes a valid contract. Plaintiff and the Class formed a contract with Capital One. The terms of that contract include the promises and affirmations of fact made by Capital One in its 0% APR Offer and the Credit Card Agreement as described above.

92. Plaintiff and Class members paid the transaction fee, used the Access Check before the expiration of the promotion deadline, and otherwise complied with the terms of the 0% APR Offer.

93. Under the applicable contract terms, Capital One customers were promised a grace period on new purchases when they paid their purchase balances in full before the due date each month. They were also promised 0% APR for a term of months through interest-free Access Checks.

94. Capital One breached the terms of the Credit Card Agreement by eliminating the grace period once Plaintiff and Class members accepted the 0% APR Offer and made new purchases. Once it eliminated the grace period, Capital One improperly charged interest on new purchases made during the grace period, even though Plaintiff and Class members paid their purchase amounts in full by the due date.

95. Additionally, Capital One's practice of applying payments to special transfer balances before purchase balances in order to subject customers to interest charges and fees that they would not have otherwise incurred breached the express terms of its agreements with its customers as described herein.

96. Capital One's practice of applying payments to special transfer balances before purchase balances in order to subject customers to interest charges and fees that they would not have otherwise incurred violated Capital One's duty to act in good faith and with fair dealing in its contractual relationships with its customers.

97.     In breaching its contractual obligations and of its duties of good faith and fair dealing, Capital One assessed unreasonable and unnecessary interest on Plaintiff and the members of the Class.

98.     As a direct and proximate result of Capital One's breach of its contractual obligations, Plaintiff and Class members have been damaged in an amount to be determined at trial.

### COUNT IV

### BREACH OF THE IMPLIED COVENANT
### OF GOOD FAITH AND FAIR DEALING
#### (On Behalf of the Nationwide Class)

99.     Plaintiff repeats and re-alleges every allegation above as if set forth herein in full.

100.    Plaintiff brings this claim on her own behalf and on behalf of each member of the Class described above.

101.    Capital One is obligated by contract and common law to act in good faith and to deal fairly with each credit card customer.

102.    The purpose of the covenant of good faith and fair dealing is to guarantee that the parties remain committed to the intended and agreed-upon expectations of the parties in their performance.

103.    The 0% APR Offer described above constitutes a valid contract. Plaintiff and each Class member formed a contract with Capital One. The terms of that contract include the promises and affirmations of fact made by Capital One in its 0% APR Offer as described above.

104.    Plaintiff and Class members paid the transaction fee, used the Access Check before the expiration of the promotion deadline, and otherwise complied with the terms of the 0% APR Offer. Pursuant to the 0% APR Offer, under these circumstances, Plaintiff and Class members have a justified expectation and right to receive an interest-free amount of money for a term of months. Plaintiff and Class members also have a justified expectation and right to

continue receiving the contractual grace period as long as the purchase balance amounts are paid in full each month.

105.    Capital One routinely and regularly breached the duty of good faith and fair dealing, interfering with Plaintiff and Class member's right to receive an interest-free amount of money during the 0% APR Offer's promotional period, and to have an interest-free grace period, through among other conduct:

a) failing to charge balance, interest, minimum payment, and late fee amounts consistent with its responsibilities to Plaintiff and Class members;

b) failing to apply Plaintiff's and Class members' monthly payments consistent with its responsibilities and the terms of the 0% APR Offer and Credit Card Agreement;

c) charging interest on the Access Check amount before the expiration of the 0% APR Offer's promotional period;

d) charging late fees when Plaintiff and Class members did not pay some or all of the Access Check amount before the expiration of the 0% APR Offer's promotional period; and

e) charging minimum payment amounts before the expiration of the 0% APR Offer's promotional period when Plaintiff and Class members did not owe any amounts other than Access Check amount.

106.    Capital One also routinely and regularly breached the duty of good faith and fair dealing by calculating the minimum payment requirements for Plaintiff and Class Members based on the Access Check amounts and by also including the improper interest charges.

107.    As a direct and proximate result of Capital One's breach of its duties of good faith and fair dealing, Plaintiff and the Class of have not received the benefits they reasonably expected by accepting Capital One's 0% APR Offer, and have been damaged in an amount to be determined at trial.

## COUNT V

### VIOLATION OF THE TRUTH IN LENDING ACT, INCLUDING THE CREDIT CARD ACT, 15 U.S.C. § 1601, *et seq.*, 15 U.S.C. § 1637, *et seq.* (On Behalf of the Nationwide Class)

108.    Plaintiff repeats and re-alleges every allegation above as if set forth herein in full.

109.    The Truth in Lending Act ("TILA") is designed "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." 15 U.S.C. § 1601(a).

110.    The Credit Card Accountability Responsibility and Disclosure Act of 2009, 15 U.S.C. §1637 *et seq.* (the "Credit CARD Act") is a federal law that amends the Truth in Lending Act, and went into effect on February 22, 2010.

111.    The Credit CARD Act is comprehensive credit reform legislation whose aim is "to establish fair and transparent practices relating to the extension of credit under an open end consumer credit plan." H.R. 627, 111th Cong. (1st Sess. 2010).

112.    Capital One is a "creditor" and "card issuer", and Plaintiff and Class members are "cardholders" within the meaning of TILA, the Credit CARD Act and/or Regulation Z, which implements TILA and the Credit CARD Act.

113.    The credit card accounts held by Plaintiff and the Class, as modified by the 0% APR Offers, are "open end credit plan[s]" as defined by 15 U.S.C. § 1602(i).

114.    Capital One's conduct described above violates TILA, which requires Capital One to disclose "[t]he conditions under which a finance charge may be imposed, including the time period (if any) within which any credit extended may be repaid without incurring a finance charge," "[t]he method of determining the balance upon which a finance charge will be imposed," "[t]he method of determining the amount of the finance charge. Including any minimum of fixed amount imposed as a finance charge," and "[i]dentification of other charges

which may be imposed as part of the plan, and their method of computation." 15 U.S.C. §§ 1637(a)(1), (a)(2), (a)(3) and (a)(5).

115.    Capital One's conduct described above violates TILA's requirement with respect to introductory rates that it "clearly and conspicuously disclose, in a prominent manner" "a general description of the circumstances that may result in the revocation of the temporary annual percentage rate." 15 U.S.C. § 1637(c)(6)(C)(i). *See also* 12 C.F.R. § 226.5a(b)(1)(iv)(B).

116.    Capital One's conduct described above violates TILA's requirement with respect to introductory rates that it disclose in a "clear and conspicuous manner" "the time period in which the introductory period will end." 15 U.S.C. § 1637(c)(6)(A)(ii). *See also* 12 C.F.R. § 226.9(b)(3)(A)(a).

117.    Capital One's conduct described above violates Section 101(b)(2)(c)(1) of the Credit CARD Act, which provides, in relevant part, that "[t]he creditor shall not change the terms governing the repayment of any outstanding balance." *See* 15 U.S.C. § 1666i-1(c)(1)).

118.    Capital One's conduct described above violates Section 102 of the Credit CARD Act, which amends Section 127 of the Truth in Lending Act, provides for a "Prohibition on Penalties for On-Time Payments," and states that "a creditor may not impose any finance charge on a credit card account under an open end consumer credit plan as a result of the loss of any time period provided by the creditor within which the obligor may repay any portion of the credit extended without incurring a finance charge, with respect to (A) any balances for days in billing cycles that precede the most recent billing cycle; or (B) any balances or portions thereof in the current billing cycle that were repaid within such time period." *See* 15 U.S.C. §1637(j)(1)(A)-(B).

119.    Plaintiff and Class members are entitled to actual damages as a result of Capital One's violation of TILA and the Credit CARD Act, as well as statutory damages. *See* 15 U.S.C. § 1640(a)(2).

120.    Plaintiff and Class members are also entitled to an award of attorneys' fees and costs pursuant to 15 U.S.C. § 1640(a)(3).

## COUNT VI

### VIOLATION OF THE FAIR CREDIT BILLING ACT,
### 15 U.S.C. § 1666
### (On Behalf of Plaintiff Individually)

121. Plaintiff repeats and re-alleges every allegation above as if set forth herein in full.

122. Plaintiff brings this count on an individual basis.

123. The Fair Credit Billing Act ("FCBA"), 15 U.S.C. 1666, part of TILA and implemented by Regulation Z, 12 C.F.R. §§ 226.1-226.35, "provides an avenue by which a debtor may challenge perceived billing errors on any credit card account statement and procedures that a creditor must following in responding to properly raised billing errors." *Esquibel v. Chase Manhattan Bank USA, N.A.*, 487 F. Supp. 2d 818, 825 (S.D. Tex. 2007).

124. The interest and minimum payment charges on Plaintiff's Capital One billing statements, including those on the billing statement attached hereto as Exhibit G constitute a "billing error" as that term is defined by the FCBA. 15 U.S.C. § 1666(b).

125. By letter dated November 3, 2012, sent to Capital One, P.O. Box 30285, Salt Lake City, UT 84130-0285, Plaintiff provided written notice of Capital One's billing errors as described herein. Such letter was timely, enabled Capital One to identify Plaintiff and the account at issue, indicated Plaintiff's belief that Capital One's billing statements attached hereto as Exhibit G contained a billing error as well as the amount of the billing error, and set forth the reasons for Plaintiff's belief that Capital One's billing statement contained a billing error. *See* 15 U.S.C. § 1666(a)(1)-(3).

126. Within 30 days of receiving a written notice of a billing error, the FCBA requires Capital One to send a written acknowledgement to the obligor (here, Plaintiff), and within 90 days either "make appropriate corrections in the account of the obligor" or "send a written explanation or clarification to the obligor, after having conducted an investigation, setting forth to the extent applicable the reasons why the creditor believes the account of the obligor was

correctly shown in the statement." *See* 15 U.S.C. § 1666(a)(3)(A)-(B). *See also* 12 C.F.R. §§ 226.13(c) and (f).

127.    Capital One failed to send written acknowledgement of Plaintiff's written notice, and failed to make an appropriate correction or send a written explanation or clarification regarding the billing error.

128.    In violation of the FCBA, despite never sending written acknowledgement or explanation in response to Plaintiff's written notice, as described above, Capital One took action to collect the amounts in dispute. 15 U.S.C. § 1666(a)(3)(B).

129.    The FCBA prohibits Capital One from restricting or closing an account with respect to which an obligor has indicated a billing error. 15 U.S.C. § 1666(d). In violation of the FCBA, and as the billing statement attached as Exhibit L demonstrates, prior to sending the written clarification or explanation required by the FCBA, Capital One demanded full repayment of Plaintiff's Access Check amount prior to the expiration of the promotional period. This constitutes a violation of 15 U.S.C. § 1666(d).

130.    Capital One's conduct described herein, including the derogatory credit reports, violated the FCBA's directive that it shall not report the disputed amount "as delinquent to any third party until the creditor has met the requirements of section 16666." 15 U.S.C. § 1666a(a). *See also* 12 C.F.R. § 226.13(d)(2).

131.    By failing to comply with the requirements of the FCBA, Capital One forfeited its rights to collect from Plaintiff the improper charges. 15 U.S.C. § 1666(e).

132.    Plaintiff is entitled to actual and statutory damages as a result of Capital One's violation of the FCBA. *See* 15 U.S.C. § 1640(a)(2).

133.    Plaintiff is also entitled to an award of attorneys' fees and costs pursuant to 15 U.S.C. § 1640(a)(3).

## COUNT VII

## VIOLATION OF ARIZONA CONSUMER FRAUD ACT,
### A.R.S. § 44-1521, *et seq.*
### (On Behalf of the Arizona Class)

134.    Plaintiff repeats and re-alleges every allegation above as if set forth herein in full.

135.    In committing the acts alleged herein, Capital One has carried out a scheme designed to improperly assess and collect interest charges, late fees, and minimum payment requirements from consumers.

136.    Capital One, by the actions complained of herein has violated the Arizona Consumer Fraud Act ("ACFA"), A.R.S. §44-1521, *et seq.*, entitling Plaintiff and the members of the Arizona Class to restitution and relief under the ACFA.

137.    Capital One used deception, false pretense, misrepresentation, and omitted key facts to entice customers to participate in the 0% APR Offer and to thereby expose themselves to excessive interest charges, late fees and minimum payment requirements by accepting Capital One's 0% APR Offer.

138.    Capital One's conduct as set forth herein occurred in the course of trade or commerce.

139.    Capital One's conduct as set forth herein affects the public interest because it was part of a generalized course of conduct affecting numerous customers throughout Arizona.

140.    Capital One intended for Plaintiff and the class to rely upon the representations Capital One made regarding the basic terms of the 0% APR Offer.

141.    Capital One's conduct as set forth herein directly and proximately caused injury in fact to the business or property of Plaintiff and Arizona Class members.

142.    Capital One is liable to Plaintiff and Arizona Class members for restitution in an amount to be determined at trial, and should be enjoined from continuing to engage in these unlawful, deceptive and unreasonable practices as alleged herein.

## COUNT VII

## DECLARATORY RELIEF
### (On Behalf of the Nationwide Class)

143.    Plaintiff repeats and re-alleges every allegation above as if set forth herein in full.

144.    A controversy has arisen and now exists between Plaintiff and Class Members on the one hand and Capital One on the other.  The controversy between the parties concerns the existing, standardized 0% APR Offers and Credit Card Agreements between the parties and the parties' contractual rights and duties.  Plaintiff and Class Members contend that pursuant to the contractual terms, Capital One violates the 0% APR Offers and Credit Card Agreements by eliminating Grace Periods, and demanding collecting interest charges, late fees and minimum payment amounts as if such monies were due and owing under the 0% APR Offers and Credit Card Agreements.  Capital One disputes these contentions and contends that it properly eliminated the grace period, and these amounts are due and owing under the terms of the 0% APR Offers and Credit Card Agreements.

145.    Plaintiff requests a judicial determination of their rights and duties, and the rights and duties of absent Class members and a declaration as to the effectiveness and validity of the grace period eliminations, a declaration as to whether Capital One's demand of interest charges, late fees and minimum payment amounts are authorized pursuant to the terms of the 0% APR Offers and Credit Card Agreements, and a declaration as to whether Capital One must correct and repair Class Members' credit ratings.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for a judgment:

A.    Certifying the Class requested herein, appointing Plaintiff to be Class Representative, and her counsel to be Class Counsel;

B.    Awarding declaratory and injunctive relief as permitted by law or equity, including enjoining Capital One from continuing the unlawful practices as set forth herein, and

directing Capital One to identify, with Court supervision, victims of its conduct and pay them restitution and disgorgement of all monies acquired by Capital One by means of any act or practice declared by this Court to be wrongful;

C.   Awarding Plaintiff and the Class damages in amounts to be proven at trial;

D.   Awarding Plaintiff and the Class restitution in amounts to be proven at trial;

E.   Awarding Plaintiff and the Class statutory damages in amounts to be proven at trial;

F.   Awarding attorneys' fees and costs;

G.   Awarding pre-judgment and post-judgment interest; and

H.   Providing such further relief as may be just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury.

Dated: August 30, 2013

CUNEO GILBERT & LADUCA, LLP

By: _____
    Daniel M. Cohen (VSB # 79836)
Robert J. Cynkar (VSB # 23349)
PAMELA GILBERT
106-A S. Columbus Street
Alexandria, VA 22314
Tel: 202/789-3960
202/789-1813 (fax)
danielc@cuneolaw.com
robertc@cuneolaw.com
pgilbert@cuneolaw.com

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD
THOMAS J. O'REARDON II
701 B Street, Suite 1700
San Diego, CA 92101
Tel: 619/338-1100
619/338-1101 (fax)

tblood@bholaw.com
toreardon@bholaw.com

SCOTT+SCOTT, ATTORNEYS AT
  LAW, LLP
JOSEPH P. GUGLIELMO
JOSEPH D. COHEN
The Chrysler Building
405 Lexington Avenue, 40th Floor
New York, NY 10174
Tel: 212/223-4478
212/223-6334 (fax)
jguglielmo@scott-scott.com
jcohen@scott-scott.com

*Counsel for Plaintiff*