# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### ALEXANDRIA DIVISION

| | |
|---|---|
| MARGARET MURR and DAVID REIGN, on behalf of themselves and all others similarly situated, | Civil Action No.: 1:13-cv-1091 LMB/TCB |
| | <u>CLASS ACTION</u> |
| Plaintiffs, | |
| | JURY TRIAL DEMANDED |
| v. | |
| | Judge: Hon. Leonie M. Brinkema |
| CAPITAL ONE BANK (USA), N.A., | Filed: August 30, 2013 |
| Defendant. | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, CONDITIONAL CERTIFICATION OF SETTLEMENT CLASS, ISSUANCE OF NOTICE TO THE CLASS, AND SETTING OF FINAL APPROVAL HEARING**

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...................................................................................................1

II.     HISTORY OF THE LITIGATION ......................................................................3

    A.      Pre-Filing Investigation ..............................................................................3

    B.      Pleadings and Motions .................................................................................4

        1.      The Complaints.................................................................................4

        2.      Defendant's Motion to Dismiss .......................................................4

        3.      Defendant's Motion for Summary Judgment and Plaintiff's Motion for Class Certification ..................................................................4

    C.      Discovery ......................................................................................................5

    D.      Settlement Negotiations ...............................................................................7

III.    SETTLEMENT TERMS ........................................................................................7

    A.      The Settlement Class.....................................................................................7

    B.      Relief to Settlement Class Members.............................................................8

        1.      Monetary Relief ...............................................................................8

        2.      New 0% Offers .................................................................................11

        3.      Notice and Administration Costs, Attorney's Fees and Expenses, and Plaintiffs' Service Awards .......................................................11

    C.      The Class Notice Plan...................................................................................11

IV.     THE PROPOSED SETTLEMENT MEETS THE CRITERIA FOR PRELIMINARY APPROVAL ...........................................................................13

    A.      The Proposed Settlement Agreement Is Fair ...............................................14

        1.      The Advanced Stage of This Litigation and the Extensive Amount of Discovery Conducted Favor Preliminary Approval ...........................14

        2.      The Arms'-Length Negotiations Conducted by Experienced Class Counsel Favor Preliminary Approval ........................................................15

00079202

B.      The Proposed Settlement Agreement Is Adequate and Reasonable ......................16

      1.      The Strength of Plaintiffs' Case on the Merits and the Risks
              Inherent in Continued Litigation Favor Preliminary Approval ................16

      2.      Expected Duration and Expense of Additional Litigation Favor
              Preliminary Approval ................................................................................17

V.      THE PROPOSED CLASS NOTICE PROGRAM SHOULD BE APPROVED ...............18

VI.     THE PROPOSED CLASS SHOULD BE CONDITIONALLY CERTIFIED .................20

      A.      The Class Satisfies Federal Rule of Civil Procedure 23(a)....................................20

            1.      Numerosity................................................................................................21

            2.      Commonality..............................................................................................21

            3.      Typicality ..................................................................................................22

            4.      Adequacy of Representation ......................................................................23

      B.      The Class Should Be Preliminarily Approved Under Federal Rule of Civil
          Procedure 23(b)(3) ................................................................................................24

            1.      Common Questions Predominate over Individual Issues ..........................24

            2.      A Class Action Is the Superior Method to Settle This Controversy ..........26

VII.    PLAINTIFFS SHOULD BE APPOINTED CLASS REPRESENTATIVES AND
      CLASS COUNSEL SHOULD BE APPOINTED FOR THE CLASS .............................27

VIII.   THE PROPOSED SCHEDULE OF EVENTS .................................................................27

IX.     CONCLUSION.................................................................................................................28

00063762

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allapath Servs. v. Exxon Corp.*,
   333 F.3d 1248 (11th Cir. 2003) .........................................................................25

*Amchem Prods. v. Windsor*,
   521 U.S. 591 (1997)......................................................................20, 21, 24, 25

*Arthur v. SunTrust Bank*,
   No. 09-00415 2012 U.S. Dist. LEXIS 97933 (D.S.C. Jul. 12, 2012) ...............19, 27

*Beattie v. CenturyTel, Inc.*,
   511 F.3d 554 (6th Cir. 2007) ...........................................................................25

*Beaulieu v. EQ Indus. Servs.*,
   No. 06-400 2009 U.S. Dist. LEXIS 133023 (E.D.N.C. Apr. 20, 2009) ..................19

*Butler v. Sears, Roebuck & Co.*,
   727 F.3d 796 (7th Cir. 2013) ...........................................................................25

*Chisolm v. TranSouth Fin. Corp.*,
   184 F.R.D. 556 (E.D. Va. 1999) .......................................................................23

*In re Computer Sciences Corp. Sec. Litig.*,
   288 F.R.D. 112 (E.D. Va. 2012) .......................................................................20

*DiFelice v. U.S. Airways, Inc.*,
   235 F.R.D. 70 (E.D. Va. 2006) .........................................................................23

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974)..................................................................................19, 20

*Fisher v. Va. Elec. & Power Co.*,
   217 F.R.D. 201 (E.D. Va. 2003) .......................................................................23

*Glen v. Fairway Indep. Mortg. Corp.*,
   265 F.R.D. 474 (E.D. Mo. 2010) ......................................................................25

*Guarte v. Furniture Fair, Inc.*,
   75 F.R.D. 525 (D. Md. 1977)............................................................................22

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ..........................................................................23

00079202

*Hewlett v. Premier Salons Int'l, Inc.*,
   185 F.R.D. 211 (D. Md. 1997)..................................................................................22

*Horton v. Merrill Lynch, Pierce, Fenner & Smith*,
   855 F. Supp. 825 (E.D.N.C. 1994)........................................................................13, 14

*In re: Jiffy Lube Sec. Litig.*,
   927 F.2d 155 (4th Cir. 1991) ...........................................................................14, 15, 16

*Kleiner v. First Nat'l Bank of Atlanta*,
   97 F.R.D. 683 (N.D. Ga. 1983)................................................................................25

*Knight v. Levine*,
   No. 12-611, 2013 U.S. Dist. LEXIS 14855 (E.D. Va. Feb. 4, 2013)......................22

*Lienhart v. Dryvit Sys., Inc.*,
   255 F.3d 138 (4th Cir. 2001) ...................................................................................27

*Lomascolo v. Parsons Brinckerhoff, Inc.*,
   No. 08-1310, 2009 U.S. Dist. LEXIS 89136 (E.D. Va. June 23, 2009) ...........13, 17

*Lutz v. International Assocation of Machinists & Aero. Workers*,
   196 F.R.D. 447 (E.D. Va. 2000)...............................................................................22

*Menagaerie Prods. v. Citysearch*,
   No. 08-4263, 2009 U.S. Dist. LEXIS 108768 (C.D. Cal. Nov. 9, 2009)................25

*In re MicroStrategy, Inc. Sec. Litig.*,
   148 F. Supp. 2d 654 (E.D. Va. 2001) .............................................................14, 15, 16

*In re Mills Corp. Sec. Litig.*,
   257 F.R.D. 101 (E.D. Va. 2009) ...............................................................................22

*In re The Mills Corp. Sec. Litig.*,
   265 F.R.D. 246 (E.D. Va. 2009) ...............................................................................15

*Minter v. Wells Fargo Bank, N.A.*,
   No. 07-3442, 2011 U.S. Dist. LEXIS 47588 (D. Md. May 3, 2011)......................22

*Mullane v. Cent. Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950)..................................................................................................19

*Mund v. EMCC, Inc.*,
   259 F.R.D. 180 (D. Minn. 2009)...............................................................................25

*Powers v. Hamilton Cnty. Public Defender Comm'n*,
   501 F.3d 592 (6th Cir. 2007) ....................................................................................24

iii

*Protective Committee for Indep. Stockholders of TMT Trailer Ferry v. Anderson*,
    390 U.S. 414 (1968)........................................................................................17

*Rodger v. Elec. Data Sys. Corp.*,
    160 F.R.D. 532 (E.D.N.C. 1995) ..................................................................23

*S. Carolina Nat'l Bank v. Stone*,
    749 F. Supp. 1419 (D.S.C. 1990)..................................................................13

*Sacred Heart Health Sys. v. Humana Military Healthcare Servs.*,
    601 F.3d 1159 (11th Cir. 2010).....................................................................25

*Smilow v. Southwestern Bell Mobile Sys.*,
    323 F.3d 32 (1st Cir. 2003)............................................................................25

*South Carolina Nat'l Bank v. Stone*,
    139 F.R.D. 355 (D.S.C. 1991) ......................................................................13

*Stillmock v. Weis Markets, Inc.*,
    385 Fed. Appx. 267 (4th Cir. 2010)..............................................................24

*Talbott v. GC Servs.*,
    191 F.R.D. 99 (W.D. Va. 2000).........................................................21, 22, 24

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011)..................................................................................21

*Ward v. Dixie Nat'l Life Ins. Co.*,
    595 F.3d 164 (4th Cir. 2010) ........................................................................26

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
    722 F.3d 838 (6th Cir. 2013) ............................................................24, 26, 27

*Winingear v. City of Norfolk*,
    No. 12-cv-560, 2014 U.S. Dist. LEXIS 97392 (E.D. Va. July 14, 2014)....................13, 15, 18

**Statutes and Rules**

Arizona Consumer Fraud Act, A.R.S. § 44-1521, *et seq.*................................................1

Fair Credit Billing Act, 15 U.S.C. § 1666 ......................................................................1

Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* ................................................. *passim*

Fed. R. Civ. P. 23(a)(1)................................................................................................21

Fed. R. Civ. P. 23(a)(2)..........................................................................................21, 22

00063762

Fed. R. Civ. P. 23(a)(3) ...............................................................................................23

Fed. R. Civ. P. 23(a)(4) ...............................................................................................23

Fed. R. Civ. P. 23(b)(3) ..............................................................................7, 24, 26, 27

Fed. R. Civ. P. 23(g)(1) ...............................................................................................27

Fed. R. Civ. P. 30(b)(6) ..................................................................................................6

**Other Authorities**

David F. Herr, *Annotated Manual for Complex Litigation* § 21.632 (4th ed. 2008) .......................3

4 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, § 11.25 (4th ed. 2002).............3

Plaintiffs Margaret Murr and David Reign ("Plaintiffs") submit this memorandum in support of the Parties' joint motion for entry of the [Proposed] Order re: Preliminary Approval of Class Action Settlement.[1]

## I.    INTRODUCTION

Plaintiffs seek preliminary approval of the proposed nationwide Settlement of this class action against Capital One Bank (USA), N.A. ("Defendant" or "Capital One").  The Settlement confirms that Plaintiffs' goals for this litigation have been met – namely, providing monetary relief to Class Members and improving the disclosures in its 0% Offer to help consumers better evaluate whether the 0% Offer is right for them.

Plaintiffs allege that Capital One failed to disclose certain information regarding minimum payments and the grace period for purchases in relation to its 0% APR special transfer offers.  As a result, Plaintiffs alleged that Capital One breached its contracts with Class Members or, in the alternative, that Capital One committed fraud by not disclosing the contractual terms to them.  Plaintiffs further alleged causes of action for violations of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, the Fair Credit Billing Act, 15 U.S.C. § 1666 (on an individual basis only), and the Arizona Consumer Fraud Act, A.R.S. § 44-1521, *et seq.*

Plaintiffs have now achieved the significant goals of this consumer protection litigation. Under the Settlement, each member of the proposed Class is eligible to receive up to $5.50 for each of their eligible Capital One accounts. Capital One has also changed and improved its disclosure practices.  The Settlement provides for a directly sent, personalized Notice to all Class Members.  The Settlement's monetary awards will be sent directly to those Class Members who paid the interest charges at issue, and only accepted one 0% Offer.  This means that the monetary

---

[1]     Unless stated otherwise, all capitalized terms are defined in the Settlement Agreement ("Settlement"), which is being filed concurrently herewith.

awards will be sent automatically to approximately half of the Class and made available through an extremely simple Claim Form to the other half. Class members will recover up to 44% of the average interest paid by Class Members as a result of the charges at issue in this lawsuit, despite Capital One's vigorous dispute over the amount that would be owed, even if liability was established.

The Parties jointly request the Court conditionally certify the following Class for settlement:

> All persons within the United States who from August 1, 2008 to the Preliminary Approval Date accepted a 0% Offer from Capital One under the Settlement Class Member's account using an Access Check or No-Hassle Check.

Excluded from the Class are: (a) any Judge or Magistrate presiding over this action and immediate members of their families; (b) Defendant, Defendant's subsidiaries, parent companies, successors, predecessors, and any entity in which Defendant has a controlling interest and their current or former officers and directors; (c) persons who properly execute and file a timely Request for Exclusion from the Class; and (d) the legal representatives, successors, or assigns of any such excluded persons.

Class Notice will be emailed or mailed to Settlement Class Members for whom Capital One has or can obtain updated contact information. Additional Class Notice specifically targeting Class Members and advising them of the Settlement benefits and their rights will be published online nationwide, and will be posted on the Settlement Website in accordance with a media plan designed by experts in class action notice and administration. (*See* Settlement, at §VIII.)

At the preliminary approval stage, the Court need only "make a preliminary determination of the fairness, reasonableness, and adequacy of the settlement" so that notice of

00079202

the Settlement may be given to the Class and a fairness hearing may be scheduled to make a final determination regarding the fairness of the Settlement. *See* 4 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, § 11.25 (4th ed. 2002); David F. Herr, *Annotated Manual for Complex Litigation* ("*Manual*") § 21.632 (4th ed. 2008).

As set forth in further detail below, the proposed Settlement plainly meets the standard for preliminary approval. Thus, Plaintiff respectfully requests that the Court enter the [Proposed] Order re: Preliminary Approval of Class Action Settlement that, among other things: (1) conditionally certifies the Class for settlement purposes; (2) conditionally designates Plaintiffs Murr and Reign as Class Representatives; (3) appoints Blood Hurst & O'Reardon, LPP and Scott+Scott, Attorneys at Law, LLP as Class Counsel for the Class; (4) grants preliminary approval of the Settlement; (5) approves the proposed Class Notice Plan; and (6) schedules a Final Approval Hearing for the Settlement.

## II.    HISTORY OF THE LITIGATION

### A.    Pre-Filing Investigation

In this case, extensive work was done identifying and investigating potential claims prior to litigating this action. (*See* Declaration of Timothy G. Blood ["Blood Decl."], at ¶4.) This work, which began many months before the initial complaint was filed, included, but was not limited to, analysis of the factual background behind the 0% Offers at issue, similar offers by Capital One's competitors, Capital One's complex payment calculation and allocation methodologies, and potential legal claims and defenses. (*Id.*)

///


///

### B.     Pleadings and Motions

#### 1.     The Complaints

On August 30, 2013, plaintiff Margaret Murr filed a class action complaint captioned *Margaret Murr v. Capital One Bank (USA), N.A.*, No. 13-cv-01091-LMB-TCB, in the United States District Court for the Eastern District of Virginia, on behalf of herself and: (1) all Capital One credit card account holders nationwide who have assumed a "special transfer" balance through use of the 0% Offer's access check; and (2) all Capital One credit card account holders in Arizona who have assumed a "special transfer" balance through use of the 0% Offer's access check. (Docket No. 1, ¶58.) Concurrently with the filing of the Settlement Agreement, an amended complaint has been filed to add David Reign as an additional named plaintiff and proposed class representative.

#### 2.     Defendant's Motion to Dismiss

On October 18, 2013, Defendant filed a motion to dismiss all eight counts of the Complaint for failure to state a claim. (Docket No. 21.) On November 15, 2013, the Court held a hearing on the motion to dismiss and issued an order granting Defendant's motion to dismiss as to Count IV, breach of the implied duty of good faith and fair dealing, but denying the motion as to all other counts. (Docket Nos. 34, 35.) On November 27, 2013, Defendant filed its Answer to the Complaint, in which it expressly denied the allegations therein. (Docket No. 39.)

#### 3.     Defendant's Motion for Summary Judgment and Plaintiff's Motion for Class Certification

On May 16, 2014, Capital One filed a Motion for Summary Judgment. Capital One argued that the contractual documents fully disclosed and allowed it to take the actions it took, that the fraud claims were preempted by the National Bank Act, and the remaining claims were time barred or were based on TILA statutory claims that simply do not apply to the conduct at

issue. (Docket No. 71.) On the same day Capital One's summary judgment motion was filed, and following significant discovery and related motion practice (discussed below), Class Counsel filed a motion for class certification. (Docket No. 75.) In preparation for the class certification motion, Class Counsel also retained an expert consultant to analyze the complex account data at issue and performed significant legal research, including research into the relevant aspects of the claims at issue. (Blood Decl. at ¶3.) The Parties fully briefed both Defendant's Motion for Summary Judgment and Plaintiff's Motion for Class Certification. On June 13, 2014, the Court held a hearing on both motions. (Docket No. 98.) On June 27, 2014, the Court issued an order granting in part and denying in part Defendant's Motion for Summary Judgment. (Docket Nos. 99-100.)

On July 11, 2014, Capital One filed a Motion for Partial Reconsideration as to the Court's order. (Docket No. 102.) Capital One argued that Plaintiff's fraud claims were based entirely on omissions preempted by the National Bank Act, the contract claims failed because a contract was never formed and, in any event, Capital One complied with its unambiguous terms, and that the alleged disclosure obligations were not grounded in any TILA requirements. On August 12, 2014, the Court denied Defendant's motion without prejudice. (Docket No. 111.) On August 29, 2014, the Court issued a notice of clarification. (Docket No. 119.)

The Court has not ruled on Plaintiff's Motion for Class Certification to date based on advisement from the Parties that a proposed settlement had been reached. (Blood Decl. at ¶9.)

## C.     Discovery

This case has involved substantial amounts of discovery, including written discovery, tens of thousands of pages of document productions, and numerous depositions. On November 25, 2013, the Court issued a scheduling order and authorized discovery to commence. (Docket

No. 38.)  Two days later, on November 27, 2013, Plaintiff began serving written discovery requests.  Plaintiff initially served a set of requests for production, a set of requests for admission, and a set of interrogatories.  Even prior to Capital One's deadline to respond, the Parties began meet and confer discussions relating to Plaintiff's discovery requests.  Following numerous meet and confer discussions between the Parties, a motion to compel, and the negotiation of a detailed protocol for the production of electronically stored information, Plaintiffs' Counsel obtained and reviewed approximately 48,000 pages of documents from Capital One.  (Blood Decl. at ¶11.)  Plaintiffs' Counsel retained an outside vendor and created a coding database specifically established for this litigation.  These documents include exemplars of the 0% Offers, marketing research and analysis regarding the 0% Offers, complaints from customers, and internal memoranda and communications concerning the 0% Offers, the loss of grace periods, and how to market the 0% Offers to customers.  (*Id*.)

Plaintiffs' Counsel also took depositions of two of Capital One's employees pursuant to Federal Rule of Civil Procedure 30(b)(6) in Alexandria, Virginia.  These depositions generally concerned Capital One's development and marketing of the 0% Offers, and Capital One's policies and practices with regard to grace periods, interest rates, late charges, minimum payment requirements, and credit reporting relating to the 0% Offers.  (Blood Decl. at ¶13.)  Plaintiffs' Counsel also took the depositions of Capital One's Manager of Quality Department concerning internal customer service training and complaints made by customers regarding the 0% Offers, and Capital One's Segment Strategist in the Brand Marketing Group concerning the development and marketing of 0% Offers.  These depositions took place in Richmond, Virginia.  (*Id*.)

Finally, Capital One conducted significant discovery with respect to Plaintiff Murr.  On January 16, 2014, Plaintiff Murr provided written responses and documents to Capital One's first

sets of interrogatories and requests for production.  Thereafter, on March 25, 2014, Capital One took the deposition of Mrs. Murr.  Mrs. Mur devoted a significant amount of time and effort to preparing for her deposition, reviewing and responding to Capital One's discovery requests, reviewing pleadings, including the complaint, participating in periodic telephone conferences with her counsel, and reviewing and approving the Settlement.  In May 2014, Plaintiff Reign provided his relevant documents to Capital One.  Mr. Reign has also reviewed pleadings, searched for and provided discovery documents, approved the amended complaint, participated in telephone conferences and exchanged correspondence with his counsel, and reviewed and approved the Settlement.  (Blood Decl. at ¶14.)

### D.      Settlement Negotiations

This Settlement resulted from good faith, arm's-length settlement negotiations over many months, including three in-person mediation sessions before Magistrate Judge Theresa C. Buchanan.  Plaintiffs and Capital One submitted detailed mediation submissions to Judge Buchanan setting forth their respective views as to the strengths of their cases before each mediation session.  These settlement negotiations occurred while this action was being heavily litigated and, as a result, the Parties' respective positions were the fruits of the above-mentioned discovery that had been conducted and the motion practice that had occurred.  Every aspect of the Settlement Agreement, including its exhibits, was heavily negotiated.  (Blood Decl. at ¶18.)

## III.    SETTLEMENT TERMS

The Settlement Agreement contains the complete terms of the Settlement, which are summarized below.

### A.      The Settlement Class

The Settlement Agreement defines a national Settlement Class under Rule 23(b)(3)

00079202

composed of all persons within the United States who from August 1, 2008 to the Preliminary

Approval Date accepted a 0% Offer from Capital One using an Access Check or No-Hassle

Check. *See* Settlement Agreement, at §II, ¶2.33.

**B.** **Relief to Settlement Class Members**

**1.** **Monetary Relief**

Capital One has agreed to make monetary payments to Settlement Class Members. The

Claims Administrator will determine eligibility and distribute monetary payments in the

following three ways:

| Cash Award | Eligible Class Members | Class Member Actions Required |
|---|---|---|
| $5.50 | • Accepted a 0% APR Offer under the Settlement Class Member's Capital One account using an Access Check or a No-Hassle Check within the Class Period<br><br>• Did not accept any other 0% Offer in the same account using an Access Check or No-Hassle check three months or more before or after accepting that 0% Offer<br><br>• Paid interest on purchases as a result of either the Grace-Effect or Payment-Allocation Effect or both | None. Provided that Capital One has or the Claims Administrator obtains updated address information, Class Members need not submit a claim to receive the Cash Award. |
| $5.50 | • Accepted a 0% APR Offer under the Settlement Class Member's Capital One account using an Access Check or a No-Hassle Check within the Class Period<br><br>• Accepted one or more additional 0% Offers in the same account using an Access Check or No-Hassle Check three months or more before or after | Class Members must submit a valid Claim Form. |

8

| | | |
|---|---|---|
| | • accepting that 0% Offer<br><br>• Paid interest because of either the Grace-Period Effect or Payment-Allocation Effect | |
| $2.00 | • Accepted a 0% APR Offer under the Settlement Class Member's Capital One account using an Access Check or a No-Hassle Check within the Class Period<br><br>• Did not pay interest because of either the Grace-Period Effect or Payment-Allocation Effect | Class Members must submit a valid Claim Form |

(Settlement, at §IV, ¶4.02.)

As described above, to obtain a cash payment, Class Members either do not need to do anything or they need only fill out and return a simple Claim Form. The Claim Form, which will be provided directly to the Class Members who must return it for Settlement benefits, can be viewed and submitted online through the Settlement Website, or it can be mailed to the Claims Administrator free of charge by simply returning the postage prepaid Postcard Notice. Settlement Class Members who had multiple Capital One accounts will be entitled to receive one Cash Award for each account, with the Claims Administrator analyzing each account separately to determine its eligibility. (Settlement, §IV, ¶4.04.) These tiered payments reflect that not all Class Members were injured through Capital One's grace period and interest charge practices, and that some were harmed more than others. Nevertheless, as a percentage of the overall harm incurred because of charges flowing from the Grace-Period Effect and the Payment-Allocation Effect, this Settlement's monetary relief is significant.[2]

---

[2] The "Grace-Period Effect" generally describes the loss of the interest-free grace period as

Approximately half of the Class only ever accepted one 0% Offer and thereafter paid interest because of the Grace-Period Effect and the Payment-Allocation Effect. These "Category 1" Class Members will automatically be sent payment ($5.50) that is equal to approximately 44% of their total average interest paid as a result of the Grace-Period Effect and the Payment-Allocation Effect. Those Class Members who accepted multiple 0% Offers and were thereafter charged interest will be sent a personalized notice stating that they are entitled to $5.50, which amount is equal to approximately 21% of the total average interest paid by these "Category 2" Class Members. Lastly, even though approximately one-third of the Class never paid interest because of the Grace-Period Effect and the Payment-Allocation Effect, these "Category 3" Class Members will be sent a notice stating they are entitled to $2.00.

Approximately half of the Class fits within the category of claimants to whom Capital One has agreed to automatically send checks. Assuming these Class Member's addresses are accurate (and the Parties understand and believe that the vast majority are accurate or will be accurate after the Claims Administrator performs address updates), under the Settlement, Capital One will automatically send checks exceeding $4.125 million to more than 750,000 Class Members. This does not even take into account the other half of the Class that will receive direct notice and an extremely simple, one-box Claim Form that can be returned by mail, postage prepaid, or online at the Settlement Website. Moreover, in the extremely unlikely event that a substantial number of these claims are not submitted and the total amount of submitted claims does not total at least $3.125 million, then each Class Member's award will be increased on a *pro rata* basis to increase the total to $3.125 million. (Settlement, §IV, ¶4.03.)

---

a result of accepting the 0% Offer. (Settlement, §IV, ¶2.19. The "Payment-Allocation Effect" generally describes Capital One's calculation of the monthly minimum payment amount and method of applying Class Member's monthly payments to the 0% balance before the ordinary purchase balance. (*Id.*, ¶2.25.)

### 2. New 0% Offers

Capital One's current 0% Offers also contain enhancements to the disclosure language concerning the Payment-Allocation Effect. An exemplar of a current 0% Offer is attached to Blood Declaration as Exhibit C. For example, the 0% Offer now expressly provides that Capital One allocates a portion of the monthly payment to the 0% APR balance when allocating monthly payments amongst different credit card balances. (Blood Decl., Ex. C at 2 ("**Q. How are my payments applied? A.** We generally apply payments up to your minimum payment first to the balance with the lowest APR (including 0% APR), and then to balances with higher APRs."))

### 3. Notice and Administration Costs, Attorney's Fees and Expenses, and Plaintiffs' Service Awards

On top of the monetary payments to the Class, all Notice and Claims Administration Expenses, attorneys' fees and expenses, and plaintiff service awards will be paid by Capital One. Capital One agrees to pay up to $1,500,000 in Court-approved attorneys' fees and expenses. This amount is less than they attorneys' fees (the lodestar amount) and expenses incurred. In connection with final approval, Plaintiffs Murr and Reign will make application for service awards not to exceed $7,500 and $1,500, respectively. Capital One may oppose these service award amounts, but it has also agreed to pay any service awards approved by the Court. (*Id*. at §V, ¶¶5.01, 5.02.)

### C. The Class Notice Plan

The Parties have created a Notice Plan with the help of Dahl Administration, a firm that specializes in developing class action notice plans. All Settlement Class Members are current or former account holders. Once addresses are updated pursuant to the Settlement's Claims Protocol, Capital One estimates having email addresses for 70% of the Class and mailing

addresses for the remaining 30% of the Class. The Claims Administrator will then send a personalized Email Notice or Postcard Notice to these individuals via email or via first class mail. Additionally, the Claims Administrator will perform a re-mailing process for all returned Settlement Notices. (*Id*. at §VIII, ¶8.02.)

The Claims Administrator will also create a nationwide, website-based Publication Notice program to provide potential Class Members with information regarding the Settlement, including general descriptions of the lawsuit, the Settlement relief, how a claim can be filed, and the Settlement Class Members' legal rights. The Publication Notice will be published on a dedicated Settlement Website (www.CapitalOneZeroPercentSettlement.com) that the Claims Administrator will develop, maintain and administer. (Settlement, at §VIII, ¶¶8.03, 8.04.)

The Settlement Website will also contain the Settlement documents, court filings, along with information necessary to file a claim, and an electronic version of the Claim Form that members can download, complete, and submit electronically at the Settlement Website. Specifically, at a minimum, such documents will include the Settlement Agreement and attached exhibits, Email Notice, Mail Notice, a downloadable Claim Form for anyone wanting to print a hard copy and mail in the Claim Form, and, when filed, the Preliminary Approval Order, memorandum in support of the motion for final approval, and memorandum in support of an award of attorneys' fees and reimbursement of costs and expenses, and the Final Approval Order. (*Id*. at §VIII, ¶8.04.)

Finally, the Publication Notice will also direct Settlement Class Members to a toll-free telephone number where they can obtain additional information related to the Settlement. There will be a live operator available for Settlement Class Members, including for Spanish-speakers. (*Id*. at §VIII, ¶8.05.)

00079202

## IV. THE PROPOSED SETTLEMENT MEETS THE CRITERIA FOR PRELIMINARY APPROVAL

"The voluntary resolution of litigation through settlement is strongly favored by the courts" and is "particularly appropriate in class actions." *S. Carolina Nat'l Bank v. Stone*, 749 F. Supp. 1419, 1423 (D.S.C. 1990);[3] *see also Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 08-1310, 2009 U.S. Dist. LEXIS 89136, at *27 (E.D. Va. June 23, 2009) ("There is an overriding public interest in favor of settlement, particularly in class action suits.")

Courts generally follow a two-step procedure for approving class action settlements. *Horton v. Merrill Lynch, Pierce, Fenner & Smith*, 855 F. Supp. 825, 827 (E.D.N.C. 1994). "First, the Court conducts a preliminary review of the proposed settlement to determine if it 'is within the range of possible approval' or, in other words, whether there is 'probable cause' to notify the class of the proposed settlement." *Winingear v. City of Norfolk*, No. 12-cv-560, 2014 U.S. Dist. LEXIS 97392, at *10 (E.D. Va. July 14, 2014) (quoting *Horton*, 855 F. Supp. at 827). "Once the Court grants preliminary approval and notice is sent to the class, the court conducts a fairness hearing to determine if the proposed settlement is fair, reasonable, and adequate." *Winingear*, 2014 U.S. Dist. LEXIS at *10.

At this preliminary approval stage, a settlement "need not satisfy every single concern of the plaintiff class, but may fall anywhere within a broad range of upper and lower limits." *South Carolina Nat'l Bank v. Stone*, 139 F.R.D. 355, 339 (D.S.C. 1991). Preliminary approval is appropriate so long as the proposed settlement falls within "the range of possible approval." *Horton*, 855 F. Supp. at 827 (citing *In Re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1384 (D. Md. 1983)). Moreover, "'there is a strong initial presumption that the compromise is fair and reasonable.'" *In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654,

---

[3]     Internal quotes and citations omitted unless otherwise specified.

663 (E.D. Va. 2001) (quoting *S. Carolina Nat'l Bank*, 139 F.R.D. at 339).

In *In re: Jiffy Lube Sec. Litig*., 927 F.2d 155, 158 (4th Cir. 1991), the Fourth Circuit articulated two thresholds that govern whether a proposed settlement meets the requirements of Federal Rule of Civil Procedure 23 at the preliminary approval stage – fairness and adequacy.

## A.     The Proposed Settlement Agreement Is Fair

In determining the first *Jiffy Lube* threshold – fairness of a proposed settlement – courts consider:

> (1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the [relevant] area of . . . class action litigation.

927 F.2d at 158-59.  Analyzing these factors enables the Court to determine that "the settlement was reached as a result of good-faith bargaining at arm's length, without collusion . . . ." *Id*.

### 1.     The Advanced Stage of This Litigation and the Extensive Amount of Discovery Conducted Favor Preliminary Approval

The first and second *Jiffy Lube* "fairness factors" weigh in favor of preliminary approval because both the advanced posture of this case and the significant amount of discovery that has been conducted dispel any concerns of possible collusion.  *See id.,* 927 F.2d at 159 (acknowledging that a settlement reached "at a very early stage in the litigation and prior to any formal discovery, rais[es] questions of possible collusion.").  As discussed above, the Parties have already litigated a motion to dismiss, motions to compel, a motion for summary judgment, a motion to reconsider the Court's denial of summary judgment, and a motion for class certification.  When "several briefs have been filed and argued, courts should be inclined to favor the legitimacy of a settlement." *In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 254 (E.D. Va. 2009).  Several such briefs and motions were filed in this case.  Moreover, the Parties have

14

conducted a significant amount of discovery in this litigation, including numerous depositions and the production and exchange of over 48,000 pages of documents. This too favors preliminary approval of the Settlement. *See Winingear*, 2014 U.S. Dist. LEXIS 97392, at *12 ("When discovery has been largely completed, this factor weighs in favor of approving the settlement.")

The extensive discovery and motion practice in this case provided each side with the necessary insight to evaluate the merits, and, as discussed below, laid the groundwork for the arm's-length negotiations that ultimately resulted in the Settlement Agreement.

**2.** **The Arms'-Length Negotiations Conducted by Experienced Class Counsel Favor Preliminary Approval**

The third and fourth *Jiffy Lube* "fairness factors" also weigh in favor of preliminary approval of the Settlement Agreement because the negotiations were conducted at arms'-length by experienced class action litigators with the assistance of an experienced mediator. Moreover, "[i]n the absence of any evidence to the contrary, it is presumed that no fraud or collusion occurred." *Winingear*, 214 U.S. Dist. LEXIS 97392, at *13 (citing *Lomascolo*, 2009 U.S. Dist. LEXIS 89136, at *12); *see also In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d at 663. There is no such evidence here. To the contrary, the Parties' engaged in extensive, arms'-length settlement negotiations through their participation in multiple, in-person mediation sessions before an experienced and impartial mediator, Magistrate Judge Theresa C. Buchanan. During the mediation sessions, counsel for Capital One and Plaintiffs each zealously negotiated on behalf of their clients' best interests. Class Counsel, who are experienced in prosecuting complex class action claims, had a clear view of the strength and weaknesses of their case and were in a strong position to make an informed decision regarding the reasonableness of a potential settlement. (Blood Decl., at ¶¶2-3, Exs. A-B.)

00079202

Class Counsel is highly experienced in consumer class action litigation and endorses the Settlement as fair under the circumstances. Courts recognize that the opinion of experienced and informed counsel in favor of settlement should be afforded substantial consideration in determining whether a class settlement is fair and adequate. *See also In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d at 665.

The circumstances of the settlement negotiations thus demonstrate that the Settlement Agreement was anything but collusive. Both of these factors favor preliminary approval.

**B.      The Proposed Settlement Agreement Is Adequate and Reasonable**

Under the second *Jiffy Lube* factor – adequacy of the proposed settlement – courts consider the following:

> (1) the relative strength of the plaintiff's case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the expected duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement.

*Jiffy Lube*, 927 F.2d at 159.

**1.      The Strength of Plaintiffs' Case on the Merits and the Risks Inherent in Continued Litigation Favor Preliminary Approval**

An analysis of the first and second "adequacy factors" demonstrates multiple potential barriers to recovery by Class Members, which favors preliminary approval of this Settlement. Settlements resolve the inherent uncertainty on the merits, and are therefore strongly favored by the courts, particularly in class actions. *See Lomascolo*, 2009 U.S. Dist. LEXIS 89136, at *27. This action is not unique in that regard – the Parties disagree about the merits, and there is substantial uncertainty about the outcome of this action. The Supreme Court has recognized that the delay and risk of protracted litigation is a primary reason for counsel to recommend, and the court to approve, a settlement. *See Protective Committee for Indep. Stockholders of TMT Trailer*

*Ferry v. Anderson*, 390 U.S. 414, 424 (1968) (stating that a judge must consider "the complexity, expense, and likely duration" of the litigation.)

Assuming that litigation was to proceed, the hurdles faced by Plaintiffs prior to trial would be substantial. As to Plaintiffs' breach of contract and Truth in Lending Act ("TILA") claims, Defendant has argued that these claims cannot be certified for class litigation because common issues of fact would not predominate as the proposed class includes customers who would not have been entitled to an interest-free grace period. Defendant has also argued that the fraud claims cannot be certified for class litigation because: (1) common issues of fact would not predominate due to necessary, individualized inquires as to whether a class member relied on Defendant's alleged omission of contractual terms; and (2) common issues of law would not predominate due to material differences in different states' fraud laws, including the statute of limitations period. (Docket No. 82.) During several hearings relating to the certification motion, the Court strongly suggested it was likely to accept at least some of Capital One's arguments.

On the merits, Capital One strongly contends that its actions were authorized by the contracts governing Class Member's accounts. (Docket Nos. 72, 82, 103.) In addition, Defendant disputes the appropriate measures of restitution or damages, and contends that the Class contains many satisfied, uninjured persons. (Docket No. 82 at 18-19.) This Settlement avoids the effect of all of these defenses and achieves a fair and adequate result without the need for prolonged and risky litigation.

Thus, considerations of the first and second "adequacy factors" strongly supports preliminary approval of the Settlement.

### 2. Expected Duration and Expense of Additional Litigation Favor Preliminary Approval

In addition to the substantial risks and uncertainty inherent in continued litigation, the

Parties face the certainty that further litigation would be expensive, complex, and time consuming.

Here, the proposed Settlement Agreement specifically addresses the alleged deceptive conduct by providing carefully-tailored economic benefits to all Class Members. The proposed Settlement is able to provide these benefits without the risk and delays of continued litigation, trial, and appeal. The expense and duration of the litigation are significant factors considered in evaluating the reasonableness of a settlement. There can be no doubt that litigating this action through the expert stage, trial and any appeals would be time-consuming and expensive.

At a minimum, absent settlement, litigation would likely continue for a year or more before Plaintiff or the Class would see the potential for any recovery based on a trial – possibly more in the event of an appeal. The fact that this Settlement eliminates substantial delay and large expenses strongly weighs in favor of approval. *See Winingar*, 2014 U.S. Dist. LEXIS 97392, at *19.

By reaching this Settlement, the Parties will avoid protracted litigation and establish a means for prompt resolution of Class Members' claims. The avenue of relief provided by the Settlement ensures meaningful benefits to Class Members. Given the alternative of continued, long, and complex litigation before this Court, the risks involved in such litigation and the possibility of further appellate litigation, the availability of prompt relief under the Settlement is highly beneficial to the Class. Thus, all of the relevant "adequacy factors" weigh in favor of preliminary approval of the Settlement.

## V. THE PROPOSED CLASS NOTICE PROGRAM SHOULD BE APPROVED

The threshold requirement concerning class notice is whether the means employed to distribute the notice was reasonably calculated to apprise the class of the pendency of the action,

the proposed settlement, and the class members' rights to opt out or object. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974); *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950). The mechanics of the notice process are left to the discretion of the Court. *See Beaulieu v. EQ Indus. Servs.*, No. 06-400 2009 U.S. Dist. LEXIS 133023, at *80-*81 (E.D.N.C. Apr. 20, 2009) (quoting *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 122 (8th Cir. 1975) ("While [Rule 23] does not spell out the required contents of the settlement notice, it must 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'")). The notice should describe the settlement and Class Members' ability to seek exclusion "clearly and concisely . . . in plain, easily understood language . . . ." *Arthur v. SunTrust Bank (In re LandAmerica 1031 Exch. Servs. Inc. IRS 1031 Tax Deferred Exch. Litig.),* No. 09-00415 2012 U.S. Dist. LEXIS 97933, at *24-*25 (D.S.C. Jul. 12, 2012).

The proposed Notice more than satisfies these requirements. The Parties have negotiated and drafted a Class Notice, which is written in simple terminology and includes: (1) basic information about the lawsuit; (2) a description of the benefits provided by the Settlement; (3) an explanation of how Class Members can obtain Settlement benefits; (4) an explanation of how Class Members can exercise their right to opt-out or object to the Settlement; (5) an explanation that any claims against Capital One that could have been litigated in this action will be released if the Class Member does not opt out from the Settlement; (6) the names of counsel for the Class and information regarding attorneys' fees, expenses, and service awards; (7) the fairness hearing date; (8) an explanation of the eligibility for appearing at the fairness hearing; and (9) the Settlement Website and a toll-free number where additional information can be obtained. The contents of the proposed Class Notice are more than adequate, and comply with the Federal

00079202

Judicial Center's model class action notices. *See* www.fjc.gov. As such, the Notice satisfies the content requirements of Rule 23.

Additionally, the proposed dissemination of the Class Notice satisfies all due process requirements. *See Eisen*, 417 U.S. at 173 (finding notice program to be "best notice practicable under the circumstances" where it includes "individual notice to all members who can be identified through reasonable effort."). The Settlement provides that after preliminary approval of the Settlement by the Court, the Claims Administrator will provide direct notice via mail or email to all Class Members for which it has updated contact information. (Settlement Agreement, at §VIII, ¶8.02.) In addition, the Claims Administrator will execute a nationwide, online publication notice and create a dedicated Settlement Website as well. (*Id.*, at §VIII, ¶¶8.03-8.04) These actions satisfy the due process requirements for Rule 23.

## VI. THE PROPOSED CLASS SHOULD BE CONDITIONALLY CERTIFIED

The Fourth Circuit recognizes the propriety of certifying a settlement class to resolve class action lawsuits. *See In re Computer Sciences Corp. Sec. Litig.*, 288 F.R.D. 112 (E.D. Va. 2012). When presented with a proposed settlement, a court must first determine whether the proposed settlement class satisfies the requirements for class certification under Federal Rule of Civil Procedure 23. *See Amchem Prods. v. Windsor*, 521 U.S. 591 (1997). However, where a court is evaluating the certification question in the context of a proposed settlement class, questions regarding the manageability of the case for trial purposes are not considered. *Id.* at 620 (the district court "need not inquire whether the case, if tried, would present intractable management problems.")

### A. The Class Satisfies Federal Rule of Civil Procedure 23(a)

Rule 23(a) enumerates four prerequisites for class certification, referred to as: (1)

numerosity; (2) commonality; (3) typicality; and (4) adequacy. In light of the Settlement, the Parties agree that each of these requirements is met.

### 1. Numerosity

Under Rule 23(a)(1), a certifiable class must be sufficiently numerous that joinder of individual class members is impracticable. "Where the class is twenty-five or more, joinder is usually presumed impracticable." *Talbott v. GC Servs.*, 191 F.R.D. 99, 102 (W.D. Va. 2000) (citing *Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n.*, 375 F.2d 648, 653 (4th Cir. 1967)). An exact number of potential claimants is not required; "[t]he court may certify a class based on a common sense estimation of the class size if the precise number of class members is unknown." *Talbott*, 191 F.R.D at 102 (citing *McGlothlin v. Connors*, 142 F.R.D. 626, 632 (W.D. Va. 1992)). Defendant's records demonstrate that the Class consists of more than 1.5 million accounts nationwide. Accordingly, the numerosity requirement is easily satisfied.

### 2. Commonality

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality is met when "the capacity of a classwide proceeding to generate common answers [is] apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). To satisfy the commonality requirement, there must be "some glue holding" together the class. *Id.* at 2551-52; *see also Talbott*, 191 F.R.D. at 103 ("Fed. R. Civ. P. 23(a)(2) requires a common question of law or fact to exist throughout the class."). "Central to this standard is not whether common questions of law or fact predominate, but only whether such questions exist." *Minter v. Wells Fargo Bank, N.A.*, No. 07-3442, 2011 U.S. Dist. LEXIS 47588, at *18 (D. Md. May 3, 2011); *see also Talbot*, 191 F.R.D. at 103; *In re Mills Corp. Sec. Litig.*, 257 F.R.D. 101, 105 (E.D. Va. 2009) (class members do not have to have

identical factual and legal claims in all respects to satisfy commonality); *Lutz v. International Assocation of Machinists & Aero. Workers*, 196 F.R.D. 447, 451 (E.D. Va. 2000) ("the fact that the factual circumstances of the various class members vary is no bar to certification of this class; certification does not require that *all* questions of law or fact be common"). "To satisfy this prerequisite, class members' claims must share at least one legal or factual element susceptible to class-wide proof." *Minter*, 2011 U.S. Dist. LEXIS 47588, at *18 (citing *Robinson v. Fountainhead Title Group Corp.*, 252 F.R.D. 275, 287 (D. Md. 2008).

Here, a classwide proceeding will generate a common answer to the primary questions in this case: whether Capital One's 0% Offer was deceptive given its uniform payment allocation and loss of grace practices; whether its uniform conduct breached the terms of the 0% Offer and the Customer Agreement or violates TILA. Finally, by its very nature, determination of the declaratory relief claim will generate common answers. *See Knight v. Levine*, No. 12-611, 2013 U.S. Dist. LEXIS 14855, at *12 (E.D. Va. Feb. 4, 2013) (granting certification where "a single declaratory judgment that the conduct of Defendants was unlawful (or not) would resolve all of the Plaintiffs' claims"); *Hewlett v. Premier Salons Int'l, Inc.*, 185 F.R.D. 211, 219 (D. Md. 1997) (declaratory and injunctive relief claims appropriate for class treatment where plaintiffs challenged a policy of racial discrimination); *Guarte v. Furniture Fair, Inc.*, 75 F.R.D. 525, 528-29 (D. Md. 1977) (declaratory and injunctive relief claims appropriate for class treatment where plaintiffs challenged a policy of extending credit in violation of TILA).

### 3. Typicality

"[T]o establish typicality [under Rule 23(a)(3)], the class representatives must show: (1) that their interests are squarely aligned with the interests of the class members; and, (2) that their claims arise from the same events or course of conduct and are premised on the same legal

theories as the claims of the class members." *Fisher v. Va. Elec. & Power Co.*, 217 F.R.D. 201, 212 (E.D. Va. 2003) (citing *Jeffreys v. Communications Workers of Am.*, 212 F.R.D. 320, 322 (E.D. Va. 2003)). "[T]he typicality requirement is satisfied even when the plaintiffs' claims and the claims of the class members are not identical." *Rodger v. Elec. Data Sys. Corp.*, 160 F.R.D. 532, 538 (E.D.N.C. 1995) (citing *Eisenberg v. Gagnon*, 766 F.2d 770, 787 (3d Cir. 1985); *see also Chisolm v. TranSouth Fin. Corp.*, 184 F.R.D. 556, 563-64 (E.D. Va. 1999) ("Complete identity between the claims constituting each individual action is not required"). Typicality is established where the class was injured through an alleged common practice. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

Typicality is met here as Plaintiffs and the proposed Class assert precisely the same claims, which arise from the same course of conduct. Plaintiffs' claims are also typical in that they seek the same forms of relief for both themselves and the Class. Because their legal theories and the nature of their claims are the same as those of the proposed Class Members they seek to represent, Plaintiffs satisfy this prerequisite.

### 4.   Adequacy of Representation

The Rule 23(a)(4) adequacy requirement is met if "the class representative and class counsel fairly and adequately protect the interests of the class." *DiFelice v. U.S. Airways, Inc.*, 235 F.R.D. 70, 79 (E.D. Va. 2006). Adequacy is met if the class representative "has no conflicting claims with other class members and has a sufficient interest in the case's result," and class counsel are "qualified to conduct the litigation vigorously." *Talbott*, 191 F.R.D. at 105. Plaintiffs' interests fully aligned with those of the Class members and are without conflicts of interest.

Further, Plaintiffs retained qualified counsel with significant experience prosecuting large

consumer rights class actions, including class actions against banks and lenders. (*See* Blood Decl. ¶2, Exs. A-B). The adequacy requirement is met.

**B.** **The Class Should Be Preliminarily Approved Under Federal Rule of Civil Procedure 23(b)(3)**

In addition to the prerequisites of Rule 23(a), a class must also meet the requirements for one of the types of classes under Rule 23(b). Here, Plaintiffs seek certification under Rule 23(b)(3). Under 23(b)(3), certification is appropriate if: (i) questions of law or fact common to the members of the class predominate over any questions affecting only individual members; and (ii) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

**1.** **Common Questions Predominate over Individual Issues**

"Predominance is a test readily met in certain cases alleging consumer or securities fraud . . . ." *Amchem*, 521 U.S. at 625. "Critically," this test "is qualitative rather than quantitative." *Stillmock v. Weis Markets, Inc.*, 385 Fed. Appx. 267, 273 (4th Cir. 2010); *see also Powers v. Hamilton Cnty. Public Defender Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007) (requirement is satisfied when the questions common to the class are "at the heart of the litigation"); *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 858 (6th Cir. 2013) ("the predominance inquiry must focus on common questions that can be proved through evidence common to the class"). An issue "central to the validity of each one of the claims" in a class action, if it can be resolved "in one stroke," can justify class treatment. *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013). The predominance inquiry "trains on the legal or factual questions that qualify each class member's case as a genuine controversy . . . ." *Amchem*, 521 U.S. at 623. "[T]he fact that a defense may arise and may

affect different class members differently does not compel a finding that individual issues predominate over common ones." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 564 (6th Cir. 2007).

Cases involving form contracts are particularly well-suited for class treatment. *Sacred Heart Health Sys. v. Humana Military Healthcare Servs.*, 601 F.3d 1159, 1171 (11th Cir. 2010) ("It is the form contract, executed under like conditions by all class members, that best facilitates class treatment.").[4] Where, as here, "the class claim is based on a promise given to all putative class members in a form contract and can be proven with common evidence, individualized inquiries are not necessary and do not defeat class certification." *Glen*, 265 F.R.D. at 481.

The predominant and common issues in this case are whether Capital One provided the deal offered in the 0% Offer or breached the terms of the 0% Offer, violated TILA and engaged in fraudulent conduct by misallocating payments, denied Class Members the right to a certain amount of money for the promotional period and took away Class Member's grace periods on regular purchases because they accepted the 0% Offer.

Similarly, the proper measure of damage will be the same for all Class Members. Indeed, where "the formula for damages [is] identical for all class members," predominance is readily met. *Ward v. Dixie Nat'l Life Ins. Co.*, 595 F.3d 164, 180 (4th Cir. 2010) (damages for all class members was "the difference between the amount defendants should have paid [] and the amount

---

[4]     *See also Glen v. Fairway Indep. Mortg. Corp.*, 265 F.R.D. 474, 481 (E.D. Mo. 2010) (predominance satisfied where form contracts were used); *Mund v. EMCC, Inc.*, 259 F.R.D. 180, 186 (D. Minn. 2009) (predominance satisfied where "materially identical contract language" raised a common legal question); *Smilow v. Southwestern Bell Mobile Sys.*, 323 F.3d 32, 42 (1st Cir. 2003) (predominance satisfied where form contracts executed by all class members); *Allapath Servs. v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th Cir. 2003) ("Because all of the dealer agreements were materially similar[,] … [w]hether [defendant] breached [its] obligation[s] was a question common to the class and the issue of liability was appropriately determined on a class-wide basis."); *Menagaerie Prods. v. Citysearch*, No. 08-4263, 2009 U.S. Dist. LEXIS 108768, at *36-*37 (C.D. Cal. Nov. 9, 2009) (predominance satisfied for nationwide class where all class members signed form contracts drafted by defendant); *Kleiner v. First Nat'l Bank of Atlanta*, 97 F.R.D. 683, 692 (N.D. Ga. 1983) ("When viewed in light of Rule 23, claims arising from interpretations of a form contract appear to present the classic case for treatment as a class action, and breach of contract cases are routinely certified as such.").

00079202

defendant actually paid"). By accepting the 0% Offer, additional interest charges arose from (1) the loss of a grace period on purchases; and (2) a higher purchase balance resulting from Capital One's allocation of the minimum payment to the 0% balance before the purchase balance. These interest amounts can be readily determined from Capital One's own detailed records. Common evidence will be used to prove Plaintiffs' class claims – primarily the 0% Offers themselves.

Accordingly, common issues predominate.

### 2. A Class Action Is the Superior Method to Settle This Controversy

Rule 23(b)(3) sets forth the factors to determine whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." These factors include: (i) the class members' interest in individually controlling separate actions; (ii) the extent and nature of any litigation concerning the controversy already begun by or against class members; (iii) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (iv) the likely difficulties in managing a class action. Fed. R. Civ. Proc. 23(b)(3)(A)-(D).

Application of the Rule 23(b)(3) "superiority" factors shows that a class action is the preferred procedure for this Settlement. The value of the claims of individual class members is too small to justify individual litigation. "Use of the class method is warranted particularly because class members are not likely to file individual actions – the cost of litigation would dwarf any potential recovery." *In re Whirlpool*, 722 F.3d at 861. It is far more efficient to litigate this action in one case, rather than many or, the "realistic" but unacceptable alternative of "zero individual suits because of litigation costs." *Id.*; *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 147 (4th Cir. 2001) (superiority "requires that a class action be superior to other methods for

the fair and efficient adjudication of the controversy."). Here, there simply is no other available method of adjudication. The requirements of Rule 23(b)(3) are satisfied.

## VII. PLAINTIFFS SHOULD BE APPOINTED CLASS REPRESENTATIVES AND CLASS COUNSEL SHOULD BE APPOINTED FOR THE CLASS

The Parties also request that the Court designate Plaintiffs Margaret Murr and David Reign as Class Representatives for the Class. As discussed above, Plaintiffs will fairly and adequately protect the interests of the Class.

Additionally, Rule 23(g)(1) requires the Court to appoint class counsel to represent the interests of the Class. *See, e.g., Arthur*, 2012 U.S. Dist. LEXIS 97933, at *29-*30. The Parties respectfully request that Blood Hurst & O'Reardon, LLP ("BHO") and Scott+Scott, Attorneys at Law, LLP ("Scott+Scott") be appointed Class Counsel for the Class. As set forth above, BHO and Scott+Scott are experienced and well-equipped to vigorously, competently, and efficiently represent the proposed Class. *See* Blood Decl., ¶2, Exs. A-B. Accordingly, the Court should appoint Timothy G. Blood of BHO and Joseph P. Guglielmo of Scott+Scott as Class Counsel for the Class.

## VIII. THE PROPOSED SCHEDULE OF EVENTS

The key Settlement-related dates, such as time to substantially complete dissemination of the Notices or to opt-out or object, are based on when preliminary approval of the Settlement is granted and the Final Approval Hearing date. The Settlement-related dates calculated in accordance with the provisions of the Settlement are:

| Event | Date |
|---|---|
| Notice dissemination substantially completed | Within ninety (90) days after entry of the Preliminary Approval Order |
| Last day for exclusions from or objections to the Settlement | No later than forty-five (45) days before the date first set for the Final Approval Hearing |

27

| | |
|---|---|
| Parties to file briefs in support of final approval and in response to objections | No later than sixty (60) days before the Final Approval Hearing |
| Parties to file supplemental briefs in support of final approval and in response to objections | No later than seven (7) days prior to the Final Approval Hearing |
| First day Final Approval Hearing can be set | No earlier than 165 days after entry of the Preliminary Approval Order |

Accordingly, the Parties request that the Court schedule the Final Approval Hearing 165 days after entry of its order granting preliminary approval or as soon thereafter as the Court's schedule permits.

## IX. CONCLUSION

For the reasons set forth above, the Parties respectfully request that the Court: (1) conditionally certify the Class; (2) appoint Plaintiffs Margaret Murr and David Reign as Class Representatives for the Class; (3) appoint Timothy G. Blood of BHO and Joseph P. Guglielmo of Scott+Scott as Class Counsel for the Class; (4) grant preliminary approval of the Settlement; (5) approve the proposed Class Notice Plan; and (6) schedule a Final Approval Hearing for the Settlement.

Dated: December 19, 2014

CUNEO GILBERT & LADUCA, LLP
DANIEL M. COHEN (VSB # 79836)
ROBERT J. CYNKAR (VSB # 23349)
PAMELA GILBERT

By:              */s/ Daniel M. Cohen*
                DANIEL M. COHEN

211 North Union Street, Suite 100
Alexandria, VA 22324
Tel: 202/789-3960
202/789-1813 (fax)
danielc@cuneolaw.com
robertc@cuneolaw.com
pgilbert@cuneolaw.com

*Counsel for Plaintiffs*

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (*pro hac vice*)
THOMAS J. O'REARDON II (*pro hac vice*)
701 B Street, Suite 1700
San Diego, CA 92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
toreardon@bholaw.com

SCOTT+SCOTT, ATTORNEYS AT LAW, LLP
JOSEPH P. GUGLIELMO (*pro hac vice*)
The Chrysler Building
405 Lexington Avenue, 40th Floor
New York, NY 10174
Tel: 212/223-4478
212/223-6334 (fax)
jguglielmo@scott-scott.com

*Counsel for Plaintiffs and Proposed Class Counsel*

MORGAN & MORGAN, P.A.
JOHN A. YANCHUNIS
One Tampa City Center
201 N. Franklin St., 7th Floor
Tampa, FL 33602
Telephone: 813/223-5505
813/223-5402 (fax)
jyanchunis@forthepeople.com

*Counsel for Plaintiffs*

00079202

**CERTIFICATE OF SERVICE**

I hereby certify that on December 19, 2014, I filed the foregoing with the Clerk of the

Court using the CM/ECF system, which will send a Notice of electronic filing to all registered

CM/ECF users listed below:

TROUTMAN SANDERS LLP
Mary C. Zinsner (VSB 31397)
S. Mohsin Reza (VSB 75347)
1850 Towers Crescent Plaza, Suite 500
Tysons Corner, VA  22182
Tel:  703/734-4351
703/448-6510 (fax)
mary.zinsner@troutmansanders.com
mohsin.reza@troutmansanders.com

FAEGRE BAKER DANIELS, LLP
Aaron D. Van Oort (*pro hac vice*)
Amanda J. Rome (*pro hac vice*)
Peter Cunningham Magnuson (*pro hac vice*)
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN  55402-3901
Tel:  612/766-7000
612/766-1600 (fax)
Aaron.VanOort@faegrebd.com
Amanda.Rome@faegrebd.com
peter.magnuson@faegrebd.com

TROUTMAN SANDERS, LLP
David N. Anthony (VSB 31696)
P.O. Box 1122
Richmond, VA  23218-1122
Tel:  804/697-5410
804/698-5118 (fax)
david.anthony@troutmansanders.com

Dated:  December 19, 2014

*/s/  Daniel M. Cohen*
Daniel M. Cohen
Virginia Bar Number 79836
CUNEO GILBERT & LADUCA, LLP
106-A S. Columbus Street
Alexandria, VA  22314
Tel:  202/789-3960
202/789-1813 (fax)
danielc@cuneolaw.com

30